815 F.2d 1034
 John LELSZ, et al., Individually and on Behalf of all others
similarly situated, Plaintiffs-Appellees,
v.
John J. KAVANAGH, M.D., et al., Defendants-Appellants,
and
Parent Association for the Retarded of Texas, Intervenor-Appellant.
John LELSZ, By and Through his parents and guardians, Mr.
and Mrs. John LELSZ, et al., Plaintiffs-Appellees,
v.
John J. KAVANAGH, M.D., Individually and as Supt. of Denton
State School, and his successors in office,
Defendant-Appellant,
and
Parents Association for the Retarded of Texas, Intervenor-Appellant,
v.
ASSOCIATION FOR RETARDED CITIZENS OF TEXAS and Advocacy,
Inc., Intervenors- Appellees.
 Nos. 85-2485, 86-1166.
 United States Court of Appeals,
Fifth Circuit.
 May 4, 1987.
 
 Philip Durst, Austin, Tex., for Kavanagh.
 Paul M. Smith, Joel I. Klein, Washington, D.C., for Parent Ass'n in No. 85-2485.
 David Ferleger, Barbara Hoffman, Philadelphia, Pa., for John Lelsz, Jr., et al.
 Janice L. Green, Austin, Tex., David Shaw, Hartford, Conn., Rona Statman, Austin, Tex., for Association for Retarded Citizens.
 Diane Shisk, Austin, Tex., for Advocacy, Inc.
 Paul Smith, Joel I. Klein, Washington, D.C., Toni Hunter, Asst. Atty. Gen., Austin, Tex., for Parents Ass'n in No. 86-1166.
 Appeals from the United States District Court for the Eastern District of Texas, William Wayne Justice, Chief Judge.
 Appeal from the United States District Court for the Northern District of Texas, Barefoot Sanders, District Judge.
 Before WISDOM, DAVIS and JONES, Circuit Judges.
 ON PETITIONS FOR REHEARING AND SUGGESTIONS FOR REHEARING EN BANC
 (Opinion January 21, 1987, 5 Cir., 1987, 807 F.2d 1243)
 PER CURIAM:
 
 
 1
 The application for rehearing is denied.
 
 
 2
 In vacating the order of June 5, 1985 and in nullifying portions of the 1983 consent order, we do not preclude the district court from enforcing the remaining portions of the consent decree if and when violations of those provisions are raised in the district court. We reiterate, however, that under Youngberg, mental patients have no federal right to a least restrictive living environment. Such a right is granted only by state law. Because Pennhurst prohibits a federal court from ordering a state to follow state law, we hold that the district court on remand may not enforce the consent decree in a way that requires the state to provide care to mental patients in the least restrictive environment. However, we do not decide what other remedy, if any, may be appropriate upon either the agreement of the parties or upon the district court's determination of federal law violations requiring further relief.
 
 
 3
 Before CLARK, Chief Judge, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, HILL and JONES, Circuit Judges.
 
 BY THE COURT:
 
 4
 The Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Federal Rules of Appellate Procedure and Local Rule 35) the Suggestions for Rehearing En Banc are DENIED.
 
 
 5
 WISDOM, Senior Circuit Judge, dissenting from Panel's Denial of Rehearing:
 
 
 6
 Although I am ineligible to participate in the Court's decision to grant or to deny a rehearing en banc, I wish to be recorded as dissenting to the panel's decision to deny a rehearing in this case. My reasons for dissenting are well expressed in Judge Reavley's able dissent.
 
 
 7
 REAVLEY, Circuit Judge, with whom CLARK, Chief Judge, RUBIN, POLITZ, RANDALL, JOHNSON, and WILLIAMS, Circuit Judges, join, dissenting:
 
 
 8
 I respectfully dissent from the en banc court's refusal to correct and clarify the panel opinion. The underlying error of the panel is its refusal to distinguish between rights and remedies. The parties entered into an agreement intended by them to remedy claims of violation of both federal and state law. The district court approved that agreement and entered the according consent decree. The panel isolates one part of the order and strikes it down on the ground that the remedy called for by this particular provision could not now be required if it were sought as an initial claim of right solely under federal constitutional or statutory law. The panel's only justification for doing so is that the Eleventh Amendment denies the federal court jurisdiction to approve and order such relief, and the panel cites as its only authority the Supreme Court's decision in Pennhurst State School v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).
 
 
 9
 Pennhurst neither addresses nor changes prior law on the jurisdiction of federal courts to order remedies for federal law violations, and it does not address federal court jurisdiction to approve an agreed remedy for mixed violations of federal and state law. In Pennhurst the only question was the jurisdiction of the district court in a contested case to enter a judgment solely on the ground that the defendants had violated Pennsylvania law. Indeed, the Supreme Court remanded the case to the court of appeals for the latter to determine if federal rights were also involved. If the present appeal concerned defendants' attempt to withdraw from the 1983 agreement, or to modify it on the ground of mistake of law, Pennhurst might have some bearing; but Pennhurst has been badly misapplied in this panel decision.
 
 
 10
 The panel does not find an abuse of discretion by the trial court. It does not vacate the 1985 order because the judge accepted the professional opinions of plaintiffs' expert witnesses in contravention of Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). Instead, the panel squarely holds that the federal court has no jurisdiction to enforce a portion of the consent decree or to remedy any violation of the consent decree by ordering community placement, or presumably any less restrictive placement, of class members.
 
 
 11
 This suit was initiated by a complaint that charged five counts of violations of federal law. Representing the defendants, the Attorney General of the State of Texas avoided trial by agreeing with the plaintiffs that the issues of the litigation would be resolved by their agreement. The parties expressly stated that the provisions of the agreement were "intended to permanently secure the right to safety and protection from harm for members of the plaintiff class under the Fourteenth Amendment to the United States Constitution"--and also to secure other constitutional rights and the rights under other federal statutes as well as their rights under the state law.
 
 
 12
 The panel opinion separates the provisions in the remedial decree relating to "least restrictive alternative" care, and attributes that particular remedy only to state-law-based claims. The parties themselves did not separate this remedial portion of their agreement and predicate it upon the rights of the plaintiffs under state law alone. The 1983 agreement, signed by the Attorney General of Texas, stated that the district court had jurisdiction and had "the authority to approve and implement the relief in this Resolution and Settlement and any plans pursuant thereto."
 
 
 13
 In a contested case, in which a pendent state-law claim is asserted, Pennhurst, requires the federal court to look at the source of the claim, but where the parties have not separated their claims and remedies and agree on remedies for both, Pennhurst itself places no jurisdictional limitation upon the federal court in enforcing the agreement.
 
 
 14
 The panel disregards the possibility that community placement of some or all of the class members might be required to remedy the Fourteenth Amendment guarantees established in Youngberg. The record contains nothing to negate the possibility that the availability of such a remedy under federal law may have figured in the decision of the parties to reach the 1983 agreement. And there is certainly no way to determine what federal violations might be established if this case were tried. The minimum to which the plaintiff class is entitled is a declaration that, if the consent decree is set aside, they may now proceed to trial to attempt to prove violations of their federal rights and, as Judge Wisdom argued in his dissent, to seek those remedies necessary and proper to correct them. The panel instead denies any day in court to the plaintiffs, at least by implication. In the order on rehearing the panel specifically limits the district court to "what other remedy"--apparently other than any less restrictive environment--to which the plaintiffs may be entitled.
 
 
 15
 There can be no doubt that a federal court, to remedy federal violations, may require state officers to adopt programs that, absent the federal violations, were not guaranteed to the plaintiffs by the Constitution or federal statute. The remedial program need only be tailored to cure the condition that offends federal law. Milliken v. Bradley, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977); Gates v. Collier, 501 F.2d 1291 (5th Cir.1974). If the parties do not choose to proceed to trial, the court may, with their agreement, enter a consent decree that provides relief greater than the court might have awarded after trial. Local Number 93 v. City of Cleveland, --- U.S. ----, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986).
 
 
 16
 The panel opinion is inconsistent with that clearly established law. Moreover, the decision affects a decree entered in the past. It therefore casts suspicion on judgments entered long before Pennhurst in cases involving state institutions where a state claim was included in the complaint, whether the judgment was entered after trial or by consent of the parties to avoid trial.
 
 
 17
 A federal district court's responsibility when presented with a consent decree is different from its responsibility or power in fashioning a remedy after contested proceedings. The state officers may decide, as a matter of substance, that they would rather agree to follow state statutory standards than risk a federally ordered remedy. Or, once the state officers decide that a suit against them for federal violations is well founded, it may be easier as a policy matter for them to concede that they will comply with the state standards and to announce that it is using those standards as a reason for its agreement. The panel, however, says that the district court has no jurisdiction to accept that position of the state officers. I can find no justification in any of the writings of the Supreme Court for this holding.
 
 
 18
 I understand and respect the Supreme Court's decisions in Pennhurst and in Youngberg. I do not argue that it is for federal courts to decide professional disputes over the preferred placement of the mentally retarded. I am not concerned with the justification, or lack of it, of the district court's orders of 1985 and 1986 from which these appeals are taken. It is the panel's unwarranted restriction on federal jurisdiction, and the denial to plaintiffs of their day in court on their federal claims, to which I do strongly object.