Fidel B. IBARRA, Jr., et al.,
Plaintiffs-Appellees,

v.

TEXAS EMPLOYMENT COMMISSION,
Defendant-Appellant,

v.

UNITED STATES DEPARTMENT OF
LABOR and United States Immigration
and Naturalization Service, Defend-
ants-Appellees.

No. 86–2762.

United States Court of Appeals,
Fifth Circuit.

Aug. 6, 1987.

Jim Mattox, Atty. Gen., Lou Bright, Suzanne Formby, J. Patrick Wisemen, Asst. Attys. Gen., Austin, Tex., for defendant-appellant.

John F. Cordes, Dept. of Justice, Washington, D.C., Katherine S. Gruenheck, East Texas Legal Services, Inc., Nacogdoches, Tex., Farmworker Justice Fund, Inc., Kristine A. Poplawski, Washington, D.C., Richard S. Fischer, Nacogdoches, Tex., for U.S. Dept. of Labor & U.S. INS.

Before CLARK, Chief Judge, RANDALL, and DAVIS, Circuit Judges.

CLARK, Chief Judge:

The Texas Employment Commission (TEC) entered into a consent decree with plaintiff class of aliens defining what categories of aliens are "permanently residing in the United States under color of law" and thus eligible to receive unemployment compensation from TEC. *See* 26 U.S.C. § 3304(a)(14)(A); Tex.Rev.Civ.Stat.Ann. art. 5221b–1(h)(1) (Vernon 1987). Before the district court gave final approval to the decree, the Department of Labor (DOL) informed TEC that it considered the consent decree inconsistent with federal law and warned that it might institute compliance proceedings. TEC sought to withdraw from the consent decree, but the district court refused and gave final approval to the decree. We conclude that the district court abused its discretion in approving the consent decree and reverse.

## I.

Unemployed workers receive compensation through a cooperative federal-state scheme. *Wimberly v. Labor & Indus. Relations Comm'n*, —— U.S. ——, 107 S.Ct. 821, 824, 93 L.Ed.2d 909 (1987). The Federal Unemployment Tax Act (FUTA), 26 U.S.C. §§ 3301–3311, does not mandate state participation; rather, by providing federal grants and tax credits FUTA creates incentives for states to adopt employment security programs that comply with minimum federal standards. *New Hampshire Dep't of Employment Sec. v. Marshall*, 616 F.2d 240, 241 (1st Cir.), *cert. denied*, 449 U.S. 806, 101 S.Ct. 53, 66 L.Ed.2d 10 (1980). Through its tax the scheme derives funds used principally to defray administrative expenses. Through its incentives, the scheme makes it advantageous for states to impose taxes which create funds for compensation payments to employees.

FUTA imposes an excise tax on total wages paid by employers. 26 U.S.C. § 3301. The Act also provides that employers are entitled to a credit of up to 90% of their FUTA tax liability for contributions to a certified state unemployment compensation program. *Id.* § 3302. An amount equal to the proceeds from the FUTA tax is deposited in the employment security administration account of the federal Unemployment Trust Fund. 42 U.S.C. § 1101(b); *see id.* § 1104(a). The Trust Fund then makes this money available to assist certified states in administering their unemployment compensation programs. *Id.* §§ 501, 1101(c)(1)(A).

To be certified, a state law must comply with the requirements of 26 U.S.C. § 3304(a).[1] The two specific provisions of section 3304 involved in this case require the state law to provide that

> (4) all money withdrawn from the unemployment fund of the State shall be used solely in the payment of unemployment compensation, exclusive of expenses of administration [subject to exceptions not at issue here];

.    .    .    .    .

---

1. To qualify for federal grants, the state law must also be approved under 42 U.S.C. § 503(a). One prerequisite for approval under section 503 is that the state be approved under section 3304. *See* 42 U.S.C. § 503(a).

[and] (14)(A) compensation shall not be payable on the basis of services performed by an alien unless such alien is an individual who was lawfully admitted for permanent residence at the time such services were performed, was lawfully present for purposes of performing such services, or was permanently residing in the United States under color of law at the time such services were performed (including an alien who was lawfully present in the United States as a result of the application of the provisions of section 203(a)(7) or section 212(d)(5) of the Immigration and Nationality Act)....

DOL must approve a complying state law within 30 days of a state's request for approval. *Id.* § 3304(a).

DOL certifies all approved states to the Department of the Treasury on October 31st of each year. *Id.* § 3304(c). Before refusing to certify a state, DOL must hold a hearing after giving reasonable notice to the state agency. *Id.* At the hearing the state has the opportunity to argue and present evidence. 20 C.F.R. § 601.5(d) (1987). If DOL decides to withhold certification, the state can seek judicial review. 26 U.S.C. § 3310(a). Commencement of judicial review proceedings automatically stays agency action for 30 days. *Id.* § 3310(d)(2).[2]

Texas, along with the other 49 states, has chosen to participate in FUTA. *St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 775 n. 3, 101 S.Ct. 2142, 2144 n. 3, 68 L.Ed.2d 612 (1981). Texas employers are subject to a state tax on total wages paid. Tex.Rev.Civ.Stat. Ann. art. 5221b–5 (Vernon 1987). Money received by the state from the tax is deposited in the clearing account of the Texas Unemployment Compensation Fund. *Id.* art. 5221b–7(a), (b). Money in the clearing account is in turn deposited in Texas' account in the federal Unemployment Trust Fund. *Id.* art. 5221b–7(b); *see* 42 U.S.C. § 1104(a). When Texas needs money to pay benefits, it requisitions money from its account in the Trust Fund. Tex.Rev.Civ. Stat.Ann. art. 5221b–7(c) (Vernon 1987); *see* 42 U.S.C. § 1104(f). The money goes into the benefit account in the Texas Compensation Fund, from which it is paid out to claimants. Tex.Rev.Civ.Stat.Ann. art. 5221b–7(b), (c) (Vernon 1987).

To be eligible for unemployment benefits under Texas law, an individual must (1) register for work at and continue to report to an employment office; (2) file a claim for benefits; (3) be able to work; (4) be available for work; (5) meet statutory wage credit requirements during his or her base period, consisting of the first four completed calendar quarters within the five quarters immediately preceding the filing of a claim, Tex.Admin.Code tit. 40, § 301.1 (1985); and (6) be unemployed for seven consecutive days in which the above requirements are met and in which the individual is not disqualified for benefits. Tex. Rev.Civ.Stat.Ann. art. 5221b–2 (Vernon 1987). Texas law disqualifies aliens from receiving benefits unless they are of a status permitted to receive benefits under FUTA. The Texas statute incorporates the federal language verbatim, *id.* art. 5221b–1(h), and adds that any modification in the federal statute is applicable under Texas law, *id.*

## II.

Plaintiffs Fidel B. Ibarra, Jr. and Mario Esparza are citizens of Mexico whose claims for unemployment compensation were denied by TEC. On March 28, 1983, they filed a class action against TEC, its commissioners, and the manager of the Lufkin, Texas office of TEC seeking relief under 42 U.S.C. § 1983 for violations of the United States Constitution and federal statutes. Plaintiffs' complaint as amended alleged that TEC orally denied claims, subjected plaintiffs to unreasonable delays in adjudicating their claims, provided inadequate English-Spanish interpreters at appeals hearings, and distributed all forms and notices exclusively in English. The complaint also asserted that TEC denied

---

**2.** Similar certification, hearing, and review procedures apply to DOL decisions on providing federal grants to defray state administrative costs. *See* 42 U.S.C. §§ 502–504.

benefits to eligible aliens by improperly construing the requirement that aliens be "permanently residing in the United States under color of law" to require that aliens produce Immigration and Naturalization Service (INS) work authorization.

On August 14, 1984, at a hearing to determine whether the suit could be maintained as a class action, the parties informed the district court that they had settled all issues except the meaning of the phrase "permanently residing under color of law." The district court then certified the plaintiff class as all individuals who have been denied unemployment compensation benefits in Texas because they were unable to produce INS work authorization. *Ibarra v. Texas Employment Comm'n*, 598 F.Supp. 104, 110 (E.D.Tex.1984). Subsequently TEC sought to join DOL and INS as necessary parties and requested leave to file cross-claims against them. The district court sua sponte ordered joinder of DOL and INS, but then redesignated them as amici curiae and refused to allow TEC to file cross-claims.

Amici filed a brief outlining their interpretation of "permanently residing under color of law." After receiving the amicus brief, the parties reached a final settlement. The proposed final consent decree provided that TEC would define permanently residing in the United States under color of law "to include those aliens of whose presence in the United States [INS] is aware *and* with regard to whom there has been an affirmative case-specific or class-specific determination that allows the alien to remain in the United States for an indefinite period of time." (emphasis in original). The decree went on to list specific categories of aliens that the parties agreed met this definition.[3] This construction of alien eligibility was to apply to both wage credit and availability for work determinations by TEC. The district court gave preliminary approval to the decree.

On April 22, 1986, TEC received a letter from DOL stating that DOL believed several provisions of the consent decree to be inconsistent with federal law and warning that compliance proceedings might be instituted against TEC. DOL objected to the inclusion of several specified categories of aliens in the consent decree as contrary to its interpretation of "permanently residing in the United States under color of law." 26 U.S.C. § 3304(a)(14)(A). DOL also maintained that federal law requires states to pay benefits only to aliens who had INS work authorization at the time they filed a claim. *Id.* § 3304(a)(4) (requiring all money to be paid exclusively for unemployment compensation).

After TEC received the letter, it sought to set aside the consent decree and again to have the district court join DOL and INS as necessary parties. In the alternative, TEC requested the court to rule on the lawfulness of the decree. The district court refused to set aside the decree and held that the consent decree was not unlawful on its face. The court refused to order joinder of DOL and INS, and gave final approval to the consent decree. *Ibarra v. Texas Employment Comm'n*, 645 F.Supp. 1060, 1074 (E.D.Tex.1986). TEC appeals.

### III.

TEC argues first that the eleventh amendment deprived the district court of jurisdiction to approve the final consent decree. The eleventh amendment provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

TEC is an agency of the state of Texas entitled to eleventh amendment protection. *Daigle v. Gulf State Utilities Co., Local Union No. 2286*, 794 F.2d 974, 980 (5th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 648, 93 L.Ed.2d 704 (1986). TEC argues that the consent decree was based solely on

---

3. The final consent decree is reprinted as an appendix to the district court's opinion granting final approval to the decree. *Ibarra v. Texas Employment Comm'n*, 645 F.Supp. 1060, 1074–80 (E.D.Tex.1986).

state law, and that, therefore, under *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), and *Lelsz v. Kavanagh,* 807 F.2d 1243 (5th Cir.1987), the district court lacked jurisdiction to approve the decree.

The Supreme Court has construed the eleventh amendment as barring suits for damages in federal court against a nonconsenting state and its officials, but as allowing suits for injunctive relief against state officials. *Edelman v. Jordan,* 415 U.S. 651, 662–64, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974). In *Pennhurst,* however, the Court held that federal courts lacked jurisdiction to order injunctive relief against state officials when the only basis for that relief was to ensure compliance with state law. 465 U.S. at 106, 94 S.Ct. at 911. The Court reasoned that no federal interest in the supremacy of federal law is present in such a case, and that, rather, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* at 105–06, 94 S.Ct. at 910–11. In *Lelsz,* this circuit applied *Pennhurst* to vacate a portion of a district court order enforcing a consent decree when the relief provided by that part of the decree was grounded solely in state law. 807 F.2d at 1255.

■ Assuming without deciding that *Pennhurst* would extend to a federal court order approving a consent decree, *see Lelsz v. Kavanagh,* 815 F.2d 1034, 1036 (Reavley, J., dissenting from denial of rehearing en banc), we conclude that *Pennhurst* does not apply to the present case because the consent decree is not based on state law. Plaintiffs brought suit under 42 U.S.C. § 1983 asserting that TEC was in violation of FUTA. TEC admitted in the final consent decree that "[t]he complaint states claims which, if proven, would authorize the Court to grant relief pursuant to [section 1983]." Moreover, the Texas statute

expressly incorporates the FUTA standard, and, indeed, provides that any change in the FUTA standard is automatically incorporated into Texas law. Tex.Rev.Civ.Stat. Ann. art. 5221b–1(h) (Vernon 1987).

■ The concerns about state sovereignty and the lack of any federal interest that were critical to *Pennhurst* are not appropriate when, as in this case, the issue is one of interpreting federal law. *Pennhurst* "speaks not to this situation but proscribes federal courts from requiring states to conform their conduct to state law *qua* state law." *David D. v. Dartmouth School Comm.,* 775 F.2d 411, 423 (1st Cir. 1985), *cert. denied,* — U.S. —, 106 S.Ct. 1790, 90 L.Ed.2d 336 (1986). The district court had jurisdiction to approve the consent decree. *Cf. Everett v. Schramm,* 772 F.2d 1114, 1119 (3d Cir.1985) (AFDC program); *Barnes v. Cohen,* 749 F.2d 1009, 1019 (3d Cir.1984) (same), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985).[4]

## IV.

TEC's primary argument is that the district court abused its discretion in approving the final consent decree. TEC asserts that DOL's interpretation of "permanently residing under color of law" in its amicus brief, on which TEC relied in entering into the consent decree, materially differed from DOL's interpretation in the letter threatening decertification. It maintains that the magnitude of the consequences resulting from this interpretation required the district court to forgo approval of the decree. Plaintiffs argue in response that TEC could not unilaterally repudiate the consent decree and that neither illegality of the decree nor the change in circumstances created by DOL's letter made the district court's approval an abuse of its discretion.

---

4. Alternatively, TEC argues that DOL and INS are necessary to parties to the litigation under Federal Rule of Civil Procedure 19(a)(2). This argument is meritless. The Supreme Court has expressly held that the federal government is not a necessary party in litigation against a state

under FUTA. *California v. Grace Brethren Church,* 457 U.S. 393, 417 n. 38, 102 S.Ct. 2498, 2513 n. 38, 73 L.Ed.2d 93 (1982). Furthermore, the district court did not abuse its discretion in denying TEC leave to file cross-claims.

## A.

After the district court gave final approval to the consent decree, Congress enacted the Immigration Reform and Control Act of 1986 (IRCA), Pub.L. No. 99–603, 1986 U.S. Code Cong. & Ad. News (100 Stat.) 3359. The Act makes it unlawful for an employer to hire an "unauthorized alien," *id.* sec. 101, § 274A(a)(1), defined as an alien who is not "either (A) an alien lawfully admitted for permanent residence, or (B) authorized to be so employed by this Act or by the Attorney General," *id.* sec. 101, § 274A(h)(3). The parties agree that this prohibition is inconsistent with the provision of the consent decree allowing benefits to be paid to aliens without INS work authorization at the time they filed a claim. The district court foresaw this contingency, and incorporated a proviso that in the event of the enactment of inconsistent legislation, the parties would renegotiate their settlement and submit a revised consent decree to the district court. Despite the court's prescience, the result of IRCA is that the consent decree cannot stand as presently confected. IRCA does not, however, clarify the meaning of "permanently residing under color of law"; therefore the propriety of the district court's approval of that portion of the consent decree remains an issue.

## B.

■ Court supervision of a settlement resulting in a consent decree differs from court supervision of settlements in "ordinary litigation" or in class action suits for damages. In ordinary litigation, "that is, lawsuits brought by one private party against another private party that will not affect the rights of any other persons, settlement of the dispute is solely in the hands of the parties." *United States v. City of Miami,* 614 F.2d 1322, 1330 (5th Cir.1980), *on rehearing en banc,* 664 F.2d 435 (5th Cir.1981) (en banc) (per curiam). The parties are free to settle the lawsuit without court oversight, *id.;* Fed.R.Civ.P. 41(a)(1), and are bound by their settlement agreement as by any contract, *White Farm*

*Equip. Co. v. Kupcho,* 792 F.2d 526, 529 (5th Cir.1986).

■ A settlement of a class action requires court approval. Fed.R.Civ.P. 23(e). The court must find that the agreement is "fair, adequate, and reasonable." *Parker v. Anderson,* 667 F.2d 1204, 1208–09 (5th Cir. Unit A), *cert. denied,* 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982). The reason for requiring court approval is to protect the rights of absent class members whose interests may be compromised by the settlement. *In re Corrugated Container Antitrust Litigation,* 643 F.2d 195, 225 (5th Cir.1981), *cert. denied,* 456 U.S. 998, 102 S.Ct. 2283, 73 L.Ed.2d 1294 (1982). This circuit has refused to extend similar fiduciary protection to defendants in a class action, who are in a position to protect their own interests during negotiations. *Id.* A settlement is as binding on a defendant in a class action as on any defendant, subject to usual contract defenses. *Allen v. Alabama State Bd. of Educ.,* 612 F.Supp. 1046, 1054 (M.D.Ala.1985), *order vacated on other grounds,* 636 F.Supp. 64 (M.D. Ala.1986), *reversed,* 816 F.2d 575 (11th Cir. 1987).

Approval of a consent decree requires careful court scrutiny. As with a settlement of a class action, the settlement must be valid under contract principles and must be fair, adequate, and reasonable. *See United States v. City of Miami,* 664 F.2d 435, 441 (5th Cir.1981) (en banc) (Rubin, J., concurring). But when a consent decree contains injunctive provisions or has prospective effect, the district court must be cognizant of and sensitive to equitable considerations. *Donovan v. Robbins,* 752 F.2d 1170, 1176 (7th Cir.1985).

Even when [a consent decree] affects only the parties, the court should, therefore, examine it carefully to ascertain not only that it is a fair settlement but also that it does not put the court's sanction on and power behind a decree that violates Constitution, statute, or jurisprudence. This requires a determination that the proposal represents a reasonable factual and legal determination based on the facts of the record, whether estab-

lished by evidence, affidavit, or stipulation. If the decree also affects third parties, the court must be satisfied that the effect on them is neither unreasonable nor proscribed.

*City of Miami,* 664 F.2d at 441 (Rubin, J., concurring) (footnote omitted), *quoted with approval, Overton v. City of Austin,* 748 F.2d 941, 952–53 (5th Cir.1984), *and Williams v. City of New Orleans,* 729 F.2d 1554, 1559–60 (5th Cir.1984) (en banc).

■ While ordinary contract principles would not allow one party to a consent decree to unilaterally withdraw, the district court's discretion to disapprove the consent decree can negate the agreement. *Georgevich v. Strauss,* 772 F.2d 1078, 1085 (3d Cir.1985) (en banc), *cert. denied,* — U.S. ——, 106 S.Ct. 1229, 89 L.Ed.2d 339 (1986). We will reverse the district court's decision only for an abuse of its discretion. *City of Miami,* 664 F.2d at 442 (Rubin, J., concurring).

■ Under the circumstances of this case, we conclude that the district court abused its discretion in approving the final consent decree. We do not base our determination on DOL's alleged change of position. The "change" involved only the requirement of INS work authorization, and that issue has been rendered moot by IRCA. We also need not rule on the legality of the consent decree. Rather, we find an abuse of discretion on the basis of two related concerns: (1) the fact that TEC entered into the consent decree on the basis of a mistake as to DOL's position; and (2) the effect of that mistake on third parties—employers who would lose their FUTA tax credit if Texas' program were decertified.

■ Mistake is as much a ground for voiding a consent decree as is fraud or collusion. *See United States v. City of Fort Smith,* 760 F.2d 231, 233 (8th Cir. 1985) (mutual mistake as ground for modification of consent decree). We apply Texas law on mistake in determining the validity of the decree. *See White Farm Equipment,* 792 F.2d at 529. Under Texas law, a unilateral mistake provides relief from a contractual obligation when (1) the mistake relates to a material feature of the contract; (2) the mistake makes enforcement of the contract unconscionable; and (3) the mistake is made despite the exercise of due care. *Interfirst Bank of Abilene, N.A. v. Lull Mfg.,* 778 F.2d 228, 232 (5th Cir.1985); *accord* Restatement (Second) of Contracts § 153 (1979).

TEC's mistake is apparent and material. The record clearly establishes that TEC sought throughout the proceedings to ensure that it would not be subject to decertification by DOL. TEC entered into the consent decree only because it mistakenly believed the decree complied with DOL's interpretation of FUTA. This belief was based on TEC's interpretation of the amicus brief filed by DOL, and DOL now says that interpretation·is mistaken. The mistake is a major one—so much so·that it renders enforcement of the decree unconscionable. The consent decree commits TEC to follow a course which does not comply with DOL's interpretation of FUTA. If DOL's firm position is credited, approval of the consent decree will force DOL to initiate compliance proceedings. If decertified, TEC becomes ineligible for federal grants to defray the cost of administering the unemployment compensation program.

The record does not so clearly establish that TEC exercised reasonable care in evaluating DOL's position. But even if we were to assume that TEC's negligence would prevent the consent decree from being voidable as a matter of law, TEC's negligence in no way would detract from the possible impact of the mistake on innocent Texas employers. DOL was not a party to this litigation. The district court's determination of the propriety of the interpretation given to FUTA cannot prevent DOL's initiation of compliance proceedings as provided by Congress, or control the outcome of such proceedings. Decertification would deny the employers their FUTA tax credit. The program would become unworkable and employers and employees could suffer. The district court abused its discretion by failing to give adequate

weight to the unreasonable effect of TEC's mistake on those third parties.

Therefore, we reverse the order of the district court approving the consent decree and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.