# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 27, 2013

No. 13-30161

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CITY OF NEW ORLEANS,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before STEWART, Chief Judge, and DAVIS and WIENER, Circuit Judges.

DAVIS, Circuit Judge:

The City of New Orleans (City) appeals from the district court's orders entering judgment on a consent decree with the United States Department of Justice (DOJ) related to past practices of the New Orleans Police Department (NOPD) and denying the City's motion to vacate the judgment under Rule 60(b) of the Federal Rules of Civil Procedure. We agree with the district court that the record reveals no change in circumstances after the City proposed the consent decree that justifies the City's attempt to vacate it. Because the district court did not abuse its discretion in either order, we affirm.

No. 13-30161

I.

A.

In May 2010, at the invitation of New Orleans Mayor Mitchell Landrieu, the DOJ began an investigation of alleged constitutional violations by the NOPD. The investigation revealed longstanding patterns of unconstitutional conduct and bad practices and policies within the department. In July 2012, the DOJ filed the complaint in this case against the City under the Violent Crime Control and Law Enforcement Act, 42 U.S.C. § 14141; the Omnibus Crime Control and Safe Streets Act of 1968, 42 U.S.C. § 3789; and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d to 2000d-7, and its implementing regulations, 28 C.F.R. § 42.101-12. The purpose of the suit was to remedy the patterns or practices identified in the investigation of conduct by the NOPD that subjected individuals to excessive force in violation of the Fourth Amendment, unlawful searches and seizures in violation of the Fourth Amendment, and discriminatory policing practices in violation of the Fourteenth Amendment and the statutes listed previously.

On the same day the complaint was filed, the City and the DOJ agreed to a proposed consent decree (the NOPD Consent Decree), outlining reform measures for the NOPD. The City and the DOJ sought approval of the decree from the district court. The district court held a Fairness Hearing on September 21, 2012, to determine whether the NOPD Consent Decree was fair, adequate, and reasonable. Prior to the hearing, the DOJ and the City filed a joint supplemental motion, again asking the district court to enter the amended consent decree. The amended decree reflected edits made to correct typographical errors, to add clarity, to reflect changes requested by the district court, and to incorporate suggestions made by third parties in comments to the court.

No. 13-30161

The district court did not immediately enter the NOPD Consent Decree. After the September Fairness Hearing, the district court submitted 129 questions to the parties raising concerns about the consent decree. Several status conferences were held and numerous revised drafts of the consent decree were circulated reflecting the parties' ongoing negotiations.

At a status conference on January 11, 2013, the City informed the court that it wished orally to move to withdraw its consent to the joint motion and withdraw from the NOPD Consent Decree. The same day the district court approved the amended NOPD Consent Decree and made the following findings:

> Having considered the proposed Consent Decree, the comments received from the public and the Proposed Intervenors, the testimony and evidence presented at the September 21, 2012 Fairness Hearing, the Parties' representations, and the fact that the City has committed to adequate funding to implement the proposed Consent Decree, the Court finds that the proposed Consent Decree, as amended, is fair, adequate and reasonable, and is not the product of fraud, collusion or the like.

The court noted the City's change of position and stated that it would consider a motion seeking relief from the judgment under the Federal Rules of Civil Procedure.

On January 31, 2013, the City moved to vacate the consent decree under Rule 60(b) of the Federal Rules of Civil Procedure. The district court denied the motion to vacate on May 23, 2013. In its motion to vacate, the City raised several issues related to events that occurred at various phases of this case, discussed below.

B.

1)    *The Orleans Parish Prison Consent Decree (OPP Consent Decree)*

At the same time the DOJ was working with the City on the NOPD Consent Decree, it was also working with the Orleans Parish Sheriff on a consent decree aimed at correcting alleged unconstitutional conditions at the

No. 13-30161

Orleans Parish Prison (OPP). The City provides the majority of the funding for the OPP. The DOJ sent its findings to the Mayor and the City Attorney in 2009. In October 2011, the DOJ sent the City a draft of the OPP Consent Decree, which required the City to provide adequate funding to achieve constitutional conditions of confinement at the jail. In April 2012, private plaintiffs who were prisoners and former prisoners sued the Sheriff and other OPP officials in a case captioned *Jones v. Gusman*, Nos. 12-859, 12-138 (E.D. La.), which is being heard by a different district judge in New Orleans. In July 2012, before the City consented to the NOPD Consent Decree, the Sheriff sent the City a $45 million cost estimate for fiscal year 2012 to comply with the OPP Consent Decree. That estimate, if implemented, would have doubled the Sheriff's existing budget for the jail. In August 2012, the DOJ emailed counsel for the Sheriff and the City presenting $34.5 million as a reasonable compromise budget from which to start negotiations. A month later, in September 2012, the City joined with the DOJ in presenting the Joint Supplemental Motion for Entry of Decree in this case. The OPP Consent Decree was entered in June 2013.

The City argues that the DOJ obtained its acquiescence to the NOPD Consent Decree through ambush and without informing it of the potential costs of the OPP Consent Decree. The City further states that it cannot afford both.

2)    *Perricone's Involvement*

Sal Perricone, an Assistant United States Attorney for the Eastern District of Louisiana, was involved in the negotiations of the NOPD Consent Decree. In March 2012 (before the NOPD Consent Decree was presented to the district court), it came to light that, using an alias, Perricone had posted remarks about the NOPD and the consent decree in the public comments section of the Times Picayune newspaper website. Perricone admitted to the postings and resigned that month. Perricone had previously applied to be the Superintendent of the NOPD. The City argues that the DOJ failed to disclose the full extent of

No. 13-30161

Perricone's online activities, which involved several aliases, and that others within the DOJ committed similar abuses. The City argues that the actions of Perricone and others qualify as "misconduct" that should provide relief from the judgment under Rule 60(b)(3). The City also alleges that Perricone was responsible for including secondary employment (known locally as paid-detail) reforms in the NOPD Consent Decree. The City argues that those reforms add to its costs under the NOPD Consent Decree and raise potential legal problems because of alleged conflicts with the Fair Labor Standards Act (FLSA) and state law.

3)    *Potential Liability under the FLSA and Louisiana Law*

One of the reforms initiated by the NOPD Consent Decree involves oversight of NOPD officers' secondary employment. According to the government, the DOJ investigation identified several problems with the NOPD's unregulated system of secondary employment, which allows officers to work details for third parties to earn a second source of income. The DOJ found that officers would check in with the NOPD for a shift and then leave for a secondary detail. Officers negotiated their employment directly with employers leading to conflicts of interest, corruption, and even extortion. At a minimum, the secondary employment system resulted in the potential for divided loyalties on the part of the officers between the City and their secondary employers.

The NOPD Consent Decree creates rules and oversight for secondary employment. The City argues that no constitutional violation was associated with prior practices by the City, that Perricone pushed to have this provision inserted in the NOPD Consent Decree, and that its provisions open the City to liability for violations of the Fair Labor Standards Act.

After the district court entered judgment on the NOPD Consent Decree and denied the City's Rule 60(b) motion, the Louisiana legislature enacted Section 33:2339 of the Louisiana Revised Statutes, which restricts

No. 13-30161

communications between the committee overseeing the secondary employment reforms and the NOPD.

4)    *Procedures at the Fairness Hearing*

The City complains that at the September 21, 2012 Fairness Hearing, the district court suspended the Federal Rules of Evidence and Civil Procedure, refused to permit cross-examination of witnesses, and accepted voluminous hearsay evidence under relaxed procedures that applied to both parties.

The City appeals the district court's entry of judgment approving the NOPD Consent Decree and its denial of the City's Rule 60(b) motion to vacate that judgment.

## II.

### A.

A consent decree is like a settlement agreement, contractual in nature. *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378 (1992). "[I]t is an agreement the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Id.* A settlement agreement, once entered into, cannot be repudiated by either party and will be summarily enforced. *White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 530 (5th Cir. 1986). "[F]or purposes of determining whether the [party] entered into an enforceable settlement agreement, it is irrelevant that they attempted to revoke their consent prior to entry of judgment." *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 268 (5th Cir. 1995); *see also Stovall v. City of Cocoa*, 117 F.3d 1238, 1242-43 (11th Cir. 1997) (holding that the district court was not free to reject the consent decree solely because the City of Cocoa no longer wished to honor its agreement).

Consent decrees cannot be approved without due consideration by the district court and, once approved, have the force of a legal judgment. *Id.* (vacating district court order because it did not evaluate whether the challenged

consent decree was fair, reasonable and lawful). "Even if all of the litigants were in accord, it does not follow that the federal court must do their bidding. . . . The entry of a consent decree is more than a matter of agreement among litigants. It is a judicial act." *League of United Latin Amer. Citizens Council No. 4434 v. Clements*, 999 F.2d 831, 845 (5th Cir. 1993) (en banc) (citations omitted). As stated above, the district court held a Fairness Hearing and made appropriate findings that the Consent Decree was fair, adequate, and reasonable.

B.

Consent decrees are subject to modification by Federal Rule of Civil Procedure 60(b). *Rufo,* 502 U.S. at 378. Rule 60(b) provides that

> the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void; [or]
> . . .
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

The Supreme Court held in *Rufo* that the party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree. The change in circumstances may occur when "changed factual conditions make compliance with the decree substantially more onerous." 502 U.S. at 383-84. However, modification should not be granted when a party bases its request on events that were anticipated when it entered into the decree. *Id.* at 385.

A change in circumstances may also be recognized when a legal change occurs such that "one or more of the obligations placed upon the parties has

become impermissible under federal law." *Id.* at 388. For example, in *Ibarra v. Texas Employment Commission*, 823 F.2d 873 (5th Cir. 1987), this court reversed the order of the district court approving a consent decree because the Commission entered into the consent decree on the basis of a mistake of law as to the United States Department of Labor's position on an issue relevant to the agreement.

This court reviews the entry of a consent decree for abuse of discretion. *Ibarra*, 823 F.2d at 879. It also reviews decisions on a motion under Rule 60(b) for abuse of discretion. *Lowry Dev. v. Groves & Assocs. Ins.*, 690 F.3d 382, 285 (5th Cir. 2012).

In its Rule 60(b) motion and in this appeal, the City seeks to revoke the decree and raises the following bases for revocation:

1.  The City did not consent to both the OPP Consent Decree and the NOPD Consent Decree;

2.  The City cannot afford both the OPP Consent Decree and the NOPD Consent Decree;

3.  The secondary employment provisions of the NOPD Consent Decree potentially violate the FLSA and the newly enacted La. Rev. Stat. § 33:2339;

4.  The investigation and negotiations with the DOJ were tainted by the actions of DOJ employees; and

5.  Procedural deficiencies tainted the district court's approval process and further eroded the City's consent.

### 1. The City did not consent to both the OPP Consent Decree and the NOPD Consent Decree.

The City argues that consent was lacking for the NOPD Consent Decree because its agreement was based on a misunderstanding insofar as it did not

No. 13-30161

know the ultimate cost of the OPP Consent Decree when it signed the NOPD Consent Decree. The City alleges that the NOPD Consent Decree on its own will stretch the City's budget and that the DOJ waited until the City signed the NOPD Consent Decree before saddling the City with the costs of the OPP Consent Decree.

The district court found that the City's claim that "it had no knowledge of the potential cost ramifications" of the OPP lawsuit was "patently false." Specifically, the City has funded the jail for decades, and it was involved in the litigation involving jail conditions. Drafts of the OPP Consent Decree dated October 2011 required the City to allocate funds sufficient to maintain constitutional standards. On July 19, 2012, five days before this lawsuit was commenced and the NOPD Consent Decree signed, the Sheriff told the City that he would need a budget of $45 million to bring the jail up to the standards required in the proposed OPP Consent Decree. This budget represented a 100% increase over the prior year's funding. Further discussions about the budget took place in August 2012, in which a $34.5 million compromise budget figure was suggested. An attorney for the City participated in the negotiations of the OPP Consent Decree. The following month, the City again urged the district court in this case to approve the amended NOPD Consent Decree. Based on our review of the record, the district court correctly rejected the City's claim of lack of knowledge of the potential cost of the OPP Consent Decree. To the contrary, the record clearly demonstrates that the City was fully informed of the likely cost of complying with the OPP Consent Decree well before it signed the NOPD Consent Decree and urged the district court to approve it.

9

No. 13-30161

**2.    The City cannot afford both the OPP Consent Decree and the NOPD Consent Decree.**

In a related argument, the City claims that it is unable to fund both the NOPD Consent Decree and the OPP Consent Decree.  In *Rufo*, the Supreme Court recognized that "[m]odification of a consent decree may be warranted when changed factual conditions make compliance with the decree substantially more onerous."   502 U.S. at 384.   However, the Court also ruled that modification should not be granted when "a party relies upon events that actually were anticipated at the time it entered into a decree." *Id.* at 385.  The City's argument rests on the assumption that there was a change in the City's knowledge about the cost of the OPP Consent Decree between the time the City agreed to the NOPD Consent Decree and the date on which it sought to withdraw its consent.  As outlined above, the record belies this argument.

**3.    The secondary employment provisions of the NOPD Consent Decree potentially violate the FLSA and the newly enacted La. Rev. Stat. § 33:2339.**

One issue covered by the NOPD Consent Decree is the issue of secondary employment by NOPD officers.  Several provisions of the NOPD Consent Decree direct the newly created Office of Police Secondary Employment to become more directly involved in managing secondary employment by NOPD officers.  For example, that Office must fill all new secondary employment opportunities according to stated criteria, supervisors must conduct in-person inspections of job sites, and the NOPD and the coordinating office must establish a standard registration form for officers wishing to be assigned to secondary employment and procedures to determine whether an officer qualifies for such employment. The City's concern is that more rigorous oversight of secondary employment will obligate it to include the hours worked on secondary details when determining

10

No. 13-30161

whether overtime wages are due. In the past, the City treated secondary employment as falling within a statutory law-enforcement safe harbor of the FLSA for calculating overtime hours.[1]

The DOJ obtained an opinion letter from the United States Department of Labor confirming that, under the system established in the NOPD Consent Decree, officers' secondary employment would continue to fall under the law

---

[1] The safe harbor appears at 29 U.S.C. § 207(p)(1) and 29 C.F.R. § 553.227(d):
(p) Special detail work for fire protection and law enforcement employees; occasional or sporadic employment; substitution.

> (1) If an individual who is employed by a State, political subdivision of a State, or an interstate governmental agency in fire protection or law enforcement activities (including activities of security personnel in correctional institutions) and who, solely at such individual's option, agrees to be employed on a special detail by a separate or independent employer in fire protection, law enforcement, or related activities, the hours such individual was employed by such separate and independent employer shall be excluded by the public agency employing such individual in the calculation of the hours for which the employee is entitled to overtime compensation under this section if the public agency--
>
> > (A) requires that its employees engaged in fire protection, law enforcement, or security activities be hired by a separate and independent employer to perform the special detail,
> > (B) facilitates the employment of such employees by a separate and independent employer, or
> > (C) otherwise affects the condition of employment of such employees by a separate and independent employer.

29 U.S.C. § 207.

> (d) The primary employer may facilitate the employment or affect the conditions of employment of such employees. For example, a police department may maintain a roster of officers who wish to perform such work. The department may also select the officers for special details from a list of those wishing to participate, negotiate their pay, and retain a fee for administrative expenses. The department may require that the separate and independent employer pay the fee for such services directly to the department, and establish procedures for the officers to receive their pay for the special details through the agency's payroll system. Finally, the department may require that the officers observe their normal standards of conduct during such details and take disciplinary action against those who fail to do so.

29 C.F.R. § 553.227.

enforcement exception of the FLSA.  The City has presented no contrary legal opinion and we see no reason the exception should not apply.

This situation is not comparable to that in *Ibarra*, on which the City relies. *Ibarra v. Texas Employment Comm'n*, 823 F.2d 873 (5th Cir. 1987).  In *Ibarra*, this court reversed the order of the district court approving a consent decree because the Commission entered into the consent decree on the basis of a mistake of law as to the Department of Labor's position on an issue relevant to the agreement.  *Id*. at 879-880.  In that case the Department of Labor reversed its position that the agreement was lawful.  *Id*. at 875.  The same has not occurred in this case.  Even the City's brief appears  to recognize that no harm has occurred.  It states, with emphasis supplied: "In light of the significant penalties imposed by the FLSA, this case should be remanded to grant the City's motion to modify the NOPD Consent Decree **if DOL alters its position or should the City's secondary-employment provisions come under legal challenge**."  The FLSA provides no basis for relief from the NOPD Consent Decree at this time.

The City also relies on the recent enactment by the Louisiana Legislature of Section 33:2339 of the Louisiana Revised Statutes.  Subsection A(1) states in relevant part as follows:

> The managing director and employees of the Office of Police and Secondary Employment (OPSE), or its successor, may only communicate with the New Orleans Police Department, its staff, officers, or superintendent regarding matters concerning paid detail or secondary employment assignments.  All other matters shall be communicated in writing, in a standardized format available for public review.

The City argues that this statute seriously curtails its ability to comply with certain provisions of the NOPD Consent Decree, an argument the DOJ asserts is without merit.  However, Section 33:2339 of the Louisiana Revised Statutes was not brought to the district court's attention because it was not enacted until

June 4, 2013, after its ruling on the 60(b) motion. Accordingly, we decline to address this issue.

### 4.    The investigation and negotiations with the DOJ were tainted by the actions of DOJ employees.

The City argues that the NOPD Consent Decree should be vacated under Rule 60(b)(3) because the actions of Assistant U.S. Attorney Perricone and others constitute fraud, misrepresentations or misconduct by an opposing party.

> A party making a Rule 60(b)(3) motion must establish (1) that the adverse party engaged in fraud or other misconduct, and (2) that this misconduct **prevented the moving party from fully and fairly presenting his case**. *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place*, 62 F.3d 767, 772 (5th Cir. 1995) (quotations and citations omitted). The moving party has the burden of proving the misconduct by clear and convincing evidence. *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978). Unlike Rule 60(b)(2), 60(b)(3) does not require that the information withheld be such that it can alter the outcome of the case. *Id.* Rule 60(b)(3) "**is aimed at judgments which were unfairly obtained**, not at those which are factually incorrect." *Id.*

*Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005) (emphasis added). The district court noted that the City learned of at least one of Perricone's aliases and online postings several months before the NOPD Consent Decree was signed. After this information was revealed, the City continued negotiations on the Consent Decree. More aliases and postings were revealed after the NOPD Consent Decree was signed. Even now, however, the City does not identify any way that it was prevented from "fully and fairly presenting its case." Although the City links Perricone to the inclusion of secondary-employment provisions in the NOPD Consent Decree, substantial independent evidence of problems related to the paid detail system was brought to the investigators by the public, NOPD officers, local judges, and federal law

enforcement officials during the investigation of the NOPD. The City does not allege that Perricone's misconduct caused the City to make a mistaken assessment of the need for reforms in the NOPD's method of dealing with paid details. It only alleges that the reforms are not linked to constitutional violations and add to the cost of the NOPD Consent Decree.

The online postings by Perricone and others present no basis to vacate the consent decree.

**5.    Procedural deficiencies tainted the district court's approval process and further eroded the City's consent**.

Finally, the City alleges that the district court erred by suspending the Federal Rules of Evidence and of Civil Procedure at the Fairness Hearing. The district court prohibited cross-examination of witnesses and entered into evidence nearly every document offered by the DOJ even though most constituted unauthenticated hearsay. The same relaxed rules were applied to both the DOJ and the City. A party must make a timely objection to a ruling admitting evidence and a party cannot challenge an evidentiary ruling unless it affects a substantial right. Fed. R. Evid. 103; *Ohler v. United States*, 529 U.S. 753, 756 (2000). The City did not object to the district court's decision not to employ the rules of evidence at the hearing. This argument is therefore forfeited. Moreover, the City does not point to any evidence the district court admitted that prejudiced the City or eroded its consent to the decree, particularly since the Fairness Hearing occurred after the City had agreed to the NOPD Consent Decree, and the City urged the court to enter the decree throughout the hearing.

The City also argues that the district court has continued to modify the NOPD Consent Decree following entry of judgment. The record reflects that, although the district court has held conferences to discuss proposed edits, no

No. 13-30161

edits have actually been made.  The City's complaints on this point do not support their attempt to vacate the NOPD Consent Decree.

### III.

For the foregoing reasons, the judgments of the district court entering the NOPD Consent Decree and denying the City's Motion under Rule 60(b) are AFFIRMED.

15