Dwight DURAN, # 26571, Lonnie Duran, # 26293, Sharon Towers, and all others similarly situated; James C. Gibson, Plaintiffs,

v.

Garrey CARRUTHERS, Governor; Hal Stratton, Attorney General; O. Lane McCotter, Secretary of Corrections; Robert Tansey, Warden, PNM; Defendants.

Civ. No. 77–0721–JB.

United States District Court, D. New Mexico.

Feb. 11, 1988.

National Prison Project of the ACLU Foundation, Inc. (Elizabeth Alexander, Mark J. Lopez, Alvin J. Bronstein, on the brief), R. Raymond Twohig, Jr., Albuquerque, N.M., Mark H. Donatelli, Rothstein Law Firm, Santa Fe, N.M., for plaintiffs.

Norman S. Thayer, Sutin, Thayer & Browne, Albuquerque, N.M., for defendants.

## MEMORANDUM OPINION AND ORDER

BURCIAGA, District Judge.

The defendants in the above-captioned civil action have filed a motion seeking to vacate portions of the consent decree approved and entered by this Court in 1980.[1] As stated in their brief in support of the motion to vacate, "[d]efendants' fundamental contention is that portions of the 1980 decree create rights that are not grounded in federal law and thus cannot be enforced by a federal court." Defendants' brief, p. 2. The defendants' motion relies on the eleventh amendment, and related considerations of comity. The motion has been extensively briefed by the parties, and has been given prolonged and careful attention by the Court. Ultimately, as demonstrated in this Memorandum Opinion, the motion rests on the incorrect and unsupported conception of the nature of the eleventh amendment immunity, and a misapplication of the principle of comity. Although this memorandum may seem prosaic and somewhat pedantic, for which the Court apologizes, it is necessary in order to meet the extravagant contentions of defendants.

### I. *Plaintiffs' First Amended Complaint.*

On July 6, 1978, the plaintiff class, through counsel, filed its first amended complaint. The complaint alleges that "the totality of the overcrowding and other conditions at PNM fall beneath standards of human decency, inflict needless suffering on prisoners and create an environment which threatens prisoners' mental and physical well-being, and results in the phys-

---

1. The entire consent decree was approved and entered on July 14, 1980. Certain portions of the decree, relating to correspondence, public and attorney visitation, food service, legal ac- cess, and visiting, were submitted to the Court in 1979, and were approved at various times during that year.

ical and mental deterioration and debilitation of the persons confined therein which is both unnecessary and penologically unjustifiable." First Amended Complaint, ¶ 1.[2] This general allegation is elaborated upon by extensive factual allegations dealing with a wide range of conditions and practices alleged to be in place at the Penitentiary of New Mexico. First Amended Complaint, ¶¶ 15–32.

Following this elaboration, the first amended complaint sets forth four claims for relief: first, a claim that the totality of the conditions, alleged in the complaint, violates the federal constitutional rights of the plaintiff class secured by the first, fourth, fifth, sixth, eighth, ninth and fourteenth amendments of the United States Constitution; the second and third claims for relief are based on state constitutional and statutory law;[3] the fourth claim for relief is predicated on the assertion that the plaintiff class is a third-party beneficiary of a contractual arrangement between the defendants and the United States Law Enforcement Assistance Administration, pursuant to 49 U.S.C. § 3750.

## II. *The 1980 Consent Decree and Order.*

After extensive pretrial proceedings and negotiations, the parties presented to the Court a comprehensive settlement document entitled Agreement, to which was attached a series of documents labeled policy statements relating to various substantive areas of prison operations. This voluminous document contains mandatory and prohibitive injunctions, often of great specificity, relating to a broad range of conditions and practices at the Penitentiary of New Mexico.[4]

By an order dated July 14, 1980, the Court, finding that the agreement represented a compromised settlement of the disputes between the parties, provisionally approved the comprehensive consent judgment. The July 14 order, which itself was entered by consent, includes standard prefatory language by which the Court acknowledged that the defendants disavowed liability and that the parties agreed to limit the admissibility of the document.

Paragraph 2 of the July 14 order states that the consent decree "may include specific requirements and procedures beyond what is required by the Constitution of the United States." The order provides further for redefinition of the plaintiff class "to include all those inmates who are now, or in the future may be, incarcerated in the Penitentiary of New Mexico at Santa Fe or at any maximum, close or medium security facility opened for operation by the state of New Mexico after June 12, 1980."

Finally, the July 14 order directed that notice of the order and settlement be provided to all members of the class, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The July 14 order stated that the Court had examined the agreement and found that it represented a compromise settlement of the disputes of the parties. Following that review, under Rule 23, the

---

**2.** At the time the first amended complaint was filed, the class definition was limited to all prisoners who are or will be confined in the Penitentiary of New Mexico, the only prison in the state other than those confined in minimum security facilities, who are not part of the class. The Court's July 14, 1980, order approving the comprehensive consent decree expanded the class, "by agreement of the parties … to include all those inmates who are now, or in the future may be, incarcerated in the Penitentiary of New Mexico at Santa Fe or at any maximum, close, or medium security facility open for operation by the State of New Mexico after June 12, 1980."

**3.** The Court's jurisdiction over the state constitutional and statutory law claims was posited on principles of pendent jurisdiction.

**4.** The subjects of the consent decree are correspondence, public and attorney visitation, food service, legal access, visitation, classification, living conditions, inmate activity, medical care, mental health care, staffing and training maximum security and inmate discipline. Critically, each of these areas relates to one or more of the factual allegations set out in the first amended complaint, and incorporated into the first claim for relief, predicated on rights secured by the United States Constitution. First Amended Complaint, ¶¶ 15–32 (factual allegations) and ¶¶ 33–34 (First Claim for Relief). The precise correlation of the portions of the consent decree and the paragraphs of the first amended complaint is analyzed in n. 21, below.

Court gave tentative approval of the decree, stating that its approval was "provisional until fifteen (15) days after said notice." The order was to "become final if not rejected [by the Court] or modified by agreement of the parties based upon said objections [from the plaintiff class] within thirty (30) days."

Pursuant to that provision, the objection process commenced. Two objections from the plaintiff class were submitted to the Clerk, as mandated by the class notice, but neither objection was sufficient to provoke the Court's rejection of the consent judgment. In the absence of a motion from the parties to modify the judgment, the July 14 order, approving the consent decree and adopting it as an order of the Court, became final.

### III. *Proceedings Since Entry of the Consent Decree.*

The litigation did not terminate with entry of the consent judgment and order. Since 1980, extensive activity has taken place within the litigation, including recurrent allegations by the plaintiff class of contumacious conduct on the part of the defendants. In 1983, with the agreement of the parties, the Court appointed a special master and a deputy special master, pursuant to Rule 53, Fed.R.Civ.P., to monitor the state of the defendants' compliance with all remedial orders entered in this cause. Order of Reference, June 3, 1983. Since that time, the special master has filed twenty reports on defendants' state of compliance, totaling more than 2,000 pages setting forth findings of fact as to the state of defendants' compliance, as well as a volume of over 700 separate findings of fact relating to the state of defendants' compliance as of early 1986. Those reports have provided a factual basis for the entry of numerous orders by the Court approving the special master's findings. Additionally, the parties have entered into several stipulations provoked by the findings of the special master and the orders of the Court.

Because of the fundamental jurisdictional claim raised in defendants' motion to vacate, this history is not relevant to the Court's consideration of that motion. It serves to show, however, that it has provided the Court with a vast factual record in this case which has informed the Court's evaluation of the consent decree in determining the federal constitutional rights of the plaintiff class and the scope of equitable relief required to redress deprivation of those rights.

### IV. *Defendants' Motion to Vacate.*

#### A. *Prior Motions*

On June 12, 1987, the defendants filed their motion to vacate portions of the 1980 decree. At the time this motion was filed, defendants' motion to modify the decree, and plaintiffs' motion seeking a finding of contempt against defendants, both of which were filed in December 1985, were pending before the Court. For the purpose of those pending motions, the Court had compiled, through the efforts of the special master, an extensive factual record describing defendants' state of compliance, as of 1986, with the outstanding remedial orders.[5] Additionally, in December 1986, the Court heard extensive testimony relating to the parties' December 1985 motions.

While the 1985 motions were pending decision, defendants filed, on February 6, 1987, a motion seeking to modify a single provision of the consent decree requiring single-celling at all institutions subject to the orders in this case. Then, while it was pending, defendants gave notice of their intent to withdraw, without prejudice, the February 6, 1987, motion to modify. Withdrawal of that motion was granted in the Court's order of June 4, 1987. The defendants, by letter to the Court, suggested that the Court withhold ruling on the pending motions to modify the remedial decree until the defendants could file a different, broader motion. Presumably, the instant motion to vacate, filed June 12, is that motion.

---

**5.** The process by which that record was described is set out in the Court's order of January 10, 1986.

## B. *The June 12, 1987 Motion to Vacate*

The defendants' motion to vacate seeks to modify the 1980 decree by eliminating from it all provisions that, in the view of the defendants, are not based on federal law, or which cannot be construed plausibly as remedial measures designed to correct federal constitutional violations. The defendants contend that the eleventh amendment to the United States Constitution and derivative considerations of comity require elimination from the decree of any provisions that do not enforce federal rights.

The defendants essentially contend that "portions of the 1980 consent decree create rights that are not grounded in federal law and thus cannot be enforced by a federal court." This argument has two essential threads: *first*, that federal courts do not have authority to enter orders against states, or against state officials acting in their official capacity, except to vindicate federal rights; and *second*, that in entering orders designed to vindicate federal rights, federal courts are constrained to limit those orders to measures required to protect those federal rights. The first is based on the principle of sovereign immunity embodied in the eleventh amendment to the United States Constitution. The second is based on judicially created considerations of federalism and comity which, in defendants' view, are implicit in, or at least derivative from, the eleventh amendment principle.

Defendants' motion to vacate ultimately raises questions regarding the nature of the eleventh amendment immunity afforded to states and state officials and the relationship of that immunity to causes of action and remedial relief. Additionally, defendants' motion asserts that the judicially created doctrine of comity is rooted in the eleventh amendment and embodies constraints on the exercise of jurisdiction over causes of action.

Full and fair assessment of these complex, detailed arguments requires a careful analysis of the eleventh amendment, sovereign immunity, the nature of federal constitutional rights, the jurisdiction of federal courts over causes of action based on state rights, the nature of comity as a restraint on jurisdiction and/or relief, and the effect of these considerations when the Court enters a judgment by consent rather than a judgment following an adversary adjudication.

## V. *The Eleventh Amendment, Sovereign Immunity, and Federal Jurisdiction.*

### A. *The Eleventh Amendment, Sovereign Immunity—Federal Rights*

The eleventh amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of Another State, or by Citizens or Subjects of any Foreign State.

Although its language is to the contrary, the amendment has been construed to prohibit suits against a state brought by its own citizens as well as those brought by citizens of another state. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).[6] It is established, then, that the eleventh amendment shields the states

---

**6.** There is considerable disharmony among the current members of the United States Supreme Court as to the validity of the holding in *Hans*. Justices Brennan, Marshall, Blackmun and Stevens have expressed their opinion that *Hans v. Louisiana*, and the derivative holding in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), "cannot be reconciled with the federal system envisioned by [the Constitution]." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 303, 105 S.Ct. 3142, 3179, 87 L.Ed.2d 171 (1985) (Justice Blackmun, joined by Justices Marshall, Brennan and Stevens, dissenting).

Justice Scalia has expressed his view that "the correctness of *Hans* as an original matter, and the feasibility, if it was wrong, of correcting it without distorting what we have done in tacit reliance upon it, [are] complex enough questions that I am unwilling to address them in a case whose presentation focused on other matters." *Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. ——, ——, 107 S.Ct. 2941, 2958, 97 L.Ed.2d 389, 411 (1987) (Justice Scalia concurring in part and concurring in the judgment).

Notwithstanding the possible infirmity of *Hans*, its holding must be, and is, fully accepted for purposes of the present discussion.

from suit even when state actions are alleged to be in violation of the United States Constitution.

That doctrine, by its terms, undermines the supremacy of federal law and is therefore in derogation of the supremacy clause of the United States Constitution. Art. VI, § 2. The Supreme Court avoided this unacceptable result by its essential ruling in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In *Young,* the Court held that the eleventh amendment does not bar an action against a state official alleging that the official's conduct violated the United States Constitution. In order to redeem the holding in *Young,* and thereby secure the supremacy of federal law, the Supreme Court developed a now-famous analytical form: when the official actions of a state official come into conflict with the superior authority of the United States Constitution, the officer "is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States." *Ex Parte Young, supra* at 159–60.[7]

The legal precept of *Ex Parte Young* is this: a state inherently lacks the authority to authorize one of its officers to act in a manner that violates the United States Constitution. Therefore, any officer acting in violation of the United States Constitution is acting *ultra vires.* In so acting, the state official forfeits his representative character, and loses the sovereign immunity that, under the eleventh amendment, shields official state action from challenge in federal court. In other words, *Ex Parte Young* approves equitable actions against state officials in their individual capacities for violations of constitutional rights, the eleventh amendment notwithstanding. Thus, *Ex Parte Young* enables plaintiffs to allege "state action" sufficient to trigger the fourteenth amendment without automatically raising the bar of the eleventh amendment.[8]

■ It is not always easy to determine when an action in federal court is against the state, and therefore barred by the eleventh amendment, and when it is against state officials acting in contravention of federal rights and therefore outside the shield of the eleventh amendment. But, the Court need not explore the nuances of that inquiry for purposes of addressing the present issue. It is sufficient to observe that equitable actions against state officials, seeking prospective injunctive relief to correct federal constitutional deprivations, are permissible.[9]

B. *The Eleventh Amendment and Sovereign Immunity—State Rights in Federal Court*

The rationale that supports *Ex Parte Young* —vindication of the supremacy of federal rights—does not apply to actions in federal court in which plaintiffs seek vindication of rights based on *state* law. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), presented the question of "whether a federal court may award injunctive relief against state officials on the basis of state law." 465 U.S. at 91, 104

---

7. The obvious paradox of this construct—that such actions by state officials are "state action" for purposes of the fourteenth amendment but not for purposes of the eleventh amendment—has been recognized by the Court, but has not undermined the vitality of the principle. *See Florida Dep't of State v. Treasurer Salvors, Inc.,* 458 U.S. 670, 685, 102 S.Ct. 3304, 3314–15, 73 L.Ed.2d 1057 (1982).

8. This principle is further elucidated in *Home Telephone & Telegraph Co. v. City of Los Angeles,* 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510 (1913) which establishes the fourteenth amendment as a substantive rule of conduct binding on state officials individually regardless of whether or not the state has officially sanctioned their actions.

9. Actions of this kind are not barred by the eleventh amendment even if they will have a significant effect on the state treasury. *Edelman v. Jordan, supra* 415 U.S. at 660–73, 94 S.Ct. at 1354–61. "Such an ancillary effect on otherwise sovereign affairs of the state is a permissible and often inevitable consequence of the principle announced in *Ex Parte Young.*" *Id.* at 668, 94 S.Ct. at 1358.

S.Ct. at 903.[10] The Court answered the question in the negative, noting that

> [i]n such a case the entire basis for the doctrine of *Young* and *Edelman* disappears. A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. We conclude that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law.

465 U.S. at 106, 104 S.Ct. at 911.

■ The holding in *Pennhurst* is simply stated: the eleventh amendment prohibits a federal court from awarding injunctive relief against state officials on the basis of state law.[11]

### VI. *The Scope of Remedial Power— Comity and Equitable Discretion.*

The preceding section discussed limitations arising from the eleventh amendment on the power of federal courts to assume jurisdiction over suits involving causes of action based on (a) federal or (b) state law. The constitutional constraints operate at the most fundamental level to deprive federal courts of authority, *ab initio*, to take cognizance of legal claims. Apart from these doctrines, other considerations, arguably implicit in the constitutional scheme but ultimately creations of wise judicial policy, restrain federal judicial action in the determination of remedies. These principles operate after the threshold question of federal jurisdiction has been answered in the affirmative and a deprivation of federal rights has been found to exist. The most common term for this principle of restraint is comity.

■ One is hard-pressed to define comity, although the concept pervades contemporary jurisprudence, particularly in the area of institutional reform litigation. The essence of comity is restraint, both in adjudicating matters and in imposing remedies. First, comity requires that federal courts be reluctant to scrutinize the operations of state institutions in search of federal constitutional infirmities. Second, faced with proof of a violation of federal rights, federal courts should intervene only to the extent required to vindicate those rights. In doing so, federal courts should not "impose upon [governmental agencies] their views of what constitutes wise economic or social policy." *Dandridge v. Williams,* 397 U.S. 471, 486, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1971).[12]

---

**10.** The state law claims in *Pennhurst* were pendant to federal constitutional and statutory claims. After holding that the eleventh amendment prohibits injunctive relief against state officials based on state law, the Court in *Pennhurst* assessed the effect of the principle on federal court pendant jurisdiction. The Court held that pendent jurisdiction does not overcome the bar of the eleventh amendment, noting that "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the state that is protected by the Eleventh Amendment. We now hold that this principle applies as well to state law claims brought into federal court under pendent jurisdiction." 465 U.S. at 121.

**11.** Defendants extrapolate from *Pennhurst* three significant principles:

> 1. An extension of federal judicial power cannot be predicated on violation of state law. (This formulation is, of course, overly broad. The holding in *Pennhurst* is that the eleventh amendment proscribes the exercise of federal judicial power against states on the basis of a state's own law. There is nothing in *Pennhurst* to suggest that other forms of pendent jurisdiction are unconstitutional.)

**2.** There is a specific constitutional basis for the comity principle, with attendant limitations on the situations in which a consent decree can be treated as a waiver by a state of its immunity from excessive federal decrees. (This is an unsupported conclusion; the error, which is at the heart of defendants' argument, is discussed at length in Section VIII, below.)

**3.** The eleventh amendment creates a jurisdictional limitation on federal judicial power, thereby rendering decrees entered in violation of that limitation void. (This principle as stated is correct, but is inapplicable to the present case for reasons discussed at length in this memorandum.)

See Defendant's brief, p. 12.

**12.** Defendants correctly point out that the "principle of restraint is derived from several interrelated concerns." Defendants' brief p. 4. First, the principle of separation of powers cautions against the usurpation, by the judiciary, of functions properly charged to the legislative and executive branches of the government. *Bell v. Wolfish,* 441 U.S. 520, 548, 99 S.Ct. 1861, 1878–79, 60 L.Ed.2d 447 (1979); *Procunier v. Martinez,* 416 U.S. 396, 404–05, 94 S.Ct. 1800, 1807,

These considerations of restraint in no way vitiate the fundamental constitutional tenet that federal courts are empowered to vindicate federal rights, notwithstanding sovereign immunity or judicial restraint. Defendants' ignore the distinction in the comity principle between restraint in adjudicating claims and restraint in formulating remedies, a critical distinction explicitly acknowledged in the authorities relied upon by the defendants. For example, in their brief, the defendants cite *Smith v. Sullivan*, 611 F.2d 1039, 1045 (5th Cir.1980), for the proposition that "courts ... may not become enmeshed in the minutiae of prison operations" (internal citations omitted). In *Smith*, however, the quoted passage is immediately preceded by the obvious qualification, "unless acting to remedy federal constitutional violations as part of a totality approach." *Id.*

Defendants also rely on *Battle v. Anderson*, 708 F.2d 1523 (10th Cir.1983), *cert. dismissed, Meachum v. Battle*, 465 U.S. 1014, 104 S.Ct. 1019, 79 L.Ed.2d 248 (1984), as authority for the related but separate strands of their comity argument—separation of powers and pragmatic restraint. *See* Defendants' brief, p. 6.[13] In *Battle*, however, the Court of Appeals for the Tenth Circuit analyzed comity principles precisely as the Court does here. Recognizing the "reluctance of federal courts to intervene in matters of prison administration," the court of appeals nonetheless approved the district court's conclusion that the principle of comity "was not a justifiable basis for failure to take cognizance of valid federal constitutional claims relating to rights secured to inmates by the federal Constitution and the laws of the United States." 564 F.2d at 392, citing *Procunier v. Martinez, supra* at 817, *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972), and *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969).

Defendants also rely on a subsequent opinion in *Battle v. Anderson*, 708 F.2d at 1523, and quote from that opinion an article from the *Harvard Law Review* by Professor Owen Fiss. Again, the matter is taken out of context, and ignores the holding of the court. In fact, the 1983 *Battle* opinion sets out simply and explicitly a doctrine of equitable judicial power that serves to counterbalance, and ultimately overcome, whatever limitations might be generated by the principle of comity. The court observes that "the court, in exercising continuing jurisdiction to achieve structural reform, cannot terminate its jurisdiction until it has eliminated the constitutional violation 'root and branch'." 708 F.2d at 1538, citing *Green v. County School Board*, 391 U.S. 430, 438, 88 S.Ct. 1689, 1694, 20 L.Ed.2d 716 (1968). Thus, the Court of Appeals for the Tenth Circuit has directly applied to institutional reform litigation the vital principle that a federal court's equitable powers are inherently sufficiently broad to allow federal courts to fashion effective injunctive relief to cure federal constitutional violations. The nature of the remedy for deprivation of federal constitutional rights is determined by the nature and scope of the constitutional violation. *Swann v. Charlotte Mecklenberg Board of Education*, 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554

---

40 L.Ed.2d 224 (1974). Apart from this general principle, practical restraints dictate that the judiciary should be loath to assume the task of restructuring the operations of state government. Particularly where the daily operation of a corrections facility is in question, the judiciary should not lightly assume responsibility for making the day-to-day decisions that require a closer familiarity with the institution than is possessed by the court. *See generally Bell v. Wolfish, supra* at 547, 99 S.Ct. at 1878; *Procunier v. Martinez, supra* 416 U.S. at 405, 94 S.Ct. at 1807.

**13.** Throughout their brief, defendants entwine the concept of comity with that of separation of powers. For example, defendants quote the Supreme Court's opinion in *Bell v. Wolfish*, noting that intrusive judicial decrees usurp the role preserved under our constitutional system for the "legislative and executive branches of our government, not the judicial." 441 U.S. at 548, 99 S.Ct. at 1879. Separation of powers arguments have no role, however, where properly named defendants are charged with violations of federal rights and are held accountable for those violations by injunctions that mandate specific measures designed to reinstate and protect constitutional rights.

(1971). Once a constitutional violation is established, remedial decrees may require actions not independently required by the Constitution if those actions are, in the judgment of the court, necessary to correct the constitutional deficiencies. *Green v. County School Board, supra; Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) *(Milliken II); Gilmore v. City of Montgomery,* 417 U.S. 556, 94 S.Ct. 2416, 41 L.Ed.2d 304 (1974).[14]

▮ The principles of equitable breadth and flexibility are at some tension with the doctrine of comity. This tension, however, is superficial; ultimately the doctrines are consistent. The preservation of the supremacy of federal law that animated *Ex Parte Young* serves as well to reconcile the facial inconsistency of these doctrines. First, *Ex Parte Young* makes clear that federal courts are authorized to vindicate federal rights, the principle of sovereign immunity notwithstanding. Second, where federal constitutional rights have been traduced, principles of restraint, including comity, separation of powers and pragmatic caution, dissolve; federal courts are empowered and required to design equitable remedies that are effective to cure constitutional violations. In this tailoring of remedies, of course, the preferred course is to preserve as much discretion for state administrators as possible. Yet, where constitutional rights have been violated, comity does not require, or even permit, a federal court to countenance those violations. It thus is clear that in entering remedial decrees, such decrees should be (a) designed to be effective, (b) tailored to the constitutional violations, and (c) fashioned to restore victims to their positions before the constitutional violations. *See* n. 14, above. In guaranteeing that federal injunctions will be effective within these parameters, however, federal courts should be mindful of state sovereignty and should intrude as little as necessary on state prerogatives.

▮ Thus, it is apparent that, whatever restraints are imposed by comity considerations, these limitations are not jurisdictional. Since there is no jurisdictional bar to a court's evaluating claims of federal constitutional violation, even in a setting as delicate as that involving the operations of a state institution, the consequent limitations on a court's assessment of a consent decree presented to the court by the parties, are *not* jurisdictional. Indeed, when a remedy has been fashioned with the participation and consent of the state, and that remedy is presented to the court, the role of judicial restraint is problematic. In such a situation, it is the prison administrators themselves who are proposing the remedy. Absent a limitation on assuming jurisdiction over the proposed remedy, the court must make two inquiries: first, is the remedy sufficient to protect the interests of the plaintiff class? (This inquiry is mandated by Rule 23 of the Federal Rules of Civil Procedure.) Second, is the relief illegal? *Local No. 93 (Firefighters) v. City of Cleveland,* 478 U.S. 501, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986) (a federal court may enter a consent decree that provides relief greater than the court might have awarded after trial, unless the relief is illegal).

## VII. *Preliminary Conclusions of Law.*

Before undertaking a discussion of the weaknesses in defendants' jurisdictional argument, certain fundamental principles, derived from the foregoing discussion, should be set out.

---

**14.** It is worth noting that the holding in *Milliken II* followed the Supreme Court's holding in *Milliken v. Bradley (Milliken I),* 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974), where the Court noted that the Court's equitable remedy must be related to "the condition that offends the Constitution." 418 U.S. at 738, 94 S.Ct. at 3124. *Milliken I* and *Milliken II* therefore establish the fundamental principle that a remedial decree entered to correct constitutional viola-

tions must be designed as nearly as possible to correct the constitutional violation *and* to restore the victims of unconstitutional conduct to the position they would have occupied in the absence of such conduct. This formulation is merely a more elaborate restatement of the principle embraced by the court of appeals in *Battle v. Anderson* that constitutional violations must be eliminated "root and branch." 708 F.2d at 1538.

1. The eleventh amendment bars a suit of any kind against a state in its own name. *Hans v. Louisiana, supra.*

2. The eleventh amendment bars a suit against a state official when the suit, in essence, is one that would operate against the state. *Edelman v. Jordan, supra.*

3. The eleventh amendment bars a suit against the state official seeking injunctive relief based on state law. *Pennhurst State School & Hospital v. Halderman, supra.*

4. The eleventh amendment does not bar a suit against a state official seeking injunctive relief, alleging that the state official has violated federal law and seeking only prospective relief. *Ex Parte Young, supra.*

5. In fashioning a remedy for constitutional violations, the court should tailor its remedy to constitutional violations, yet insure that the remedy effectively cures the constitutional violations and restores the victims to their positions before the constitutional violation. *Swann v. Charlotte Mecklenberg, supra; Green v. County School Board, supra; Battle v. Anderson, supra.*

## VIII. *Discussion.*

Defendants' argument rests on a fundamental confusion and misapplication of two principles: the jurisdictional limitations derived from the eleventh amendment, and the equitable considerations derived from the principle of comity.

Plaintiffs' first amended complaint, as observed previously, set forth extensive factual allegations, relating to virtually every facet of the operation of the Penitentiary of New Mexico. Plaintiffs' first claim for relief alleged that, on whole, the factual conditions at the Penitentiary of New Mexico deprived the plaintiff class of rights secured by the United States Constitution. As a threshold matter, then, federal jurisdiction over the civil action existed by virtue of 28 U.S.C. §§ 1331 and 1343(3).

As a matter of fundamental due process, the defendants had the right to challenge the factual allegations set out in the complaint and thereby put the plaintiffs to their proof. Through the adjudicative process, defendants had the right to challenge the conclusion of law that the conditions alleged and proved by the plaintiffs, viewed in their totality, violated the constitutional rights of the plaintiff class. By agreeing to the entry of a consent judgment, however, the defendants waived their right to trial on the factual allegations and adjudication of the legal conclusion. *See generally Swift & Co. v. United States,* 276 U.S. 311, 316, 48 S.Ct. 311, 312, 72 L.Ed. 587 (1928); *Local No. 93 (Firefighters) v. City of Cleveland, supra.*

 Following the waiver of the right to proof of violation, the next step in the process of adjudication became the fashioning of appropriate remedies. The parties presented to the Court an agreed remedial order. In doing so, the defendants waived their rights to the restraints of comity in the selection of equitable remedies.[15] Indeed, judicial application of such restraints in the face of a remedy *proposed by the defendants* would be anomalous. Faced with a proposed consent decree, setting out relief that is the product of agreement of the parties, the Court is under an obligation to address only three issues:

*First,* is the complaint, which serves as the sole judicial cognizable basis for jurisdiction, sufficient to invoke federal jurisdiction? That inquiry is easily satisfied, as set out above.

*Second,* is the relief illegal? Nothing in the consent decree requires action, or refraining from action, on the part of state officials in a manner that would violate the law. Thus, the consent decree does not violate the principle established by the United States Supreme Court in *Local No. 93 v. City of Cleveland, supra.*

*Third,* is the relief adequate to protect the interest of the plaintiff class? As discussed in section II, above, this inquiry,

---

**15.** This is not to suggest that the defendants waived eleventh amendment limitations. As set out in this order, because of the federal basis for the plaintiffs' claims for relief, those limitations were not at issue in this action.

governed by Rule 23, Fed.R.Civ.P., was conducted and the Court's conclusion is supported. Thus, the Court, in exercising power over a civil action that properly invoked federal jurisdiction, approved a remedial order the content of which was the product of free, unhindered, plenary negotiations between the parties.

The defendants' motion to vacate portions of the order is based on the assertion that, notwithstanding the existence of a complaint properly invoking federal jurisdiction and the proper entry of a lawful consent decree, any portions of the consent judgment that are not grounded in federal law, or that cannot plausibly be viewed as remedies for federal violations, are void as a matter of jurisdiction. This legal position involves two distinct errors.[16]

Defendants construe *Pennhurst* as holding that "the Eleventh Amendment deprives a federal court of the power to award any relief, injunctive or otherwise, against state officials sued in their official capacity, except where that relief is premised on federal law. Defendants' brief, p. 11. This construction of *Pennhurst* is entirely accurate. Defendants' argument from *Pennhurst*, however, transmutes the pronounced principle into a limitation on remedy. This distortion is a fundamental error which undermines defendants' argument. Careful analysis of *Pennhurst* demonstrates that the eleventh amendment immunity identified and applied in that case is a product of the cause of action alleged by the *Pennhurst* plaintiffs and relied upon by the Court as a predicate for relief. This critical fact, which is ignored by defendants, is demonstrated unequivocally at several places in the opinion. The Court stated the question before it to be "whether

the claim that petitioners violated *state law* in carrying out their official duties at Pennhurst is one against the state and therefore barred by the Eleventh Amendment." 465 U.S. at 103, 104 S.Ct. at 909 (emphasis in original). The *Pennhurst* Court concluded "that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law." *Id.* at 106, 104 S.Ct. at 911. Finally, the Court described its holding to be that "federal courts lack jurisdiction to enjoin state institutions and state officials on the basis of this state law." *Id.* at 124–25, 104 S.Ct. at 921. The clear implication of *Pennhurst*, however, is that entry of relief would be appropriate if necessary to vindicate the supremacy of federal law.

Defendants also ignore the connection of the holding in *Pennhurst* to the cause of action upon which the district court predicated its award of injunctive relief. Moreover, their characterization of *Pennhurst* as a limitation on the scope of relief in the face of federal violation is unsupported. Indeed, since *Pennhurst* involved no proof of federal violation, any interpretation of *Pennhurst* as a limitation on relief for violations of federal law is unwarranted.

The mischaracterization of *Pennhurst* is most clearly revealed on page 12 of defendants' brief, where they assert that *"Pennhurst* recognized a specific constitutional basis for the comity principle, with attendant limitations on the situations in which a consent decree can be treated as a waiver by the state of its immunity from excessive federal decrees." This assertion is puzzling, for at least two reasons. First, the Supreme Court specifically announced that it did not need to reach the issue of comity, because it found "the Eleventh Amendment challenge dispositive." 465 U.S. at

---

16. Another fundamental error—the discussion of waiver—is also at the heart of defendants' position. Because this issue is irrelevant, it will not be treated in the text. The discussion of waiver in defendants' brief contends that any waiver of the state's sovereign immunity was unauthorized as a matter of law, and therefore is ineffective, at least as a constraint on the conduct of successor officials. As demonstrated in the text, the state defendants named in the first amended complaint were not protected from the allegations of that complaint by virtue of sovereign immunity. The complaint alleges federal constitutional violations and seeks injunctive relief to correct those violations. In the face of such allegations, and a federal cause of action structured in the manner of the first amended complaint, state officials, properly named, do not enjoy sovereign immunity. Accordingly, the question of waiver of sovereign immunity did not arise in this proceeding. Rather, the relevant waivers were of proof of constitutional violation and of comity-based constraints in the form of equitable relief.

97, 104 S.Ct. at 906. Second, *Pennhurst* had nothing to do with a consent decree, and contains no statement whatever as to the limitation on remedies agreed to by consent. This critical component of defendants' argument from *Pennhurst* is, in fact, unsupported by that case.

*Lelsz v. Kavanagh,* 807 F.2d 1243, *reh'g denied,* 815 F.2d 1034 (5th Cir.1987), similarly does not support defendants' argument. In *Lelsz,* the court of appeals reviewed an order entered to enforce provisions of a consent decree that had been entered two years earlier. The underlying action raised federal constitutional and state law claims relating to treatment of the plaintiff class which was comprised of mentally retarded patients housed in state schools. The consent decree approved by the court consisted of numerous provisions relating to treatment of the mentally retarded. Slightly more than one and one-half years after entry of the consent decree, the plaintiffs filed a motion for community placement, alleging that the transfer of members of the plaintiff class to community facilities was necessary to achieve compliance with the consent decree. Following a hearing on the motion, the court entered an order directing transfer to community centers. That order was appealed and is the subject of the opinion in *Lelsz.*

The court of appeals vacated the enforcement order. The court noted first that the order approving the underlying consent decree "painstakingly illicits the constitution-al or statutory basis for relief afforded in every significant paragraph of the [consent decree]. That order readily demonstrates that any rights the class members may have with regard to community placement were understood by the district court to originate in, and do in fact exist in, state law." 807 F.2d at 1247.[17] This conclusion required the court of appeals, pursuant to *Pennhurst,* to conclude that the relief granted was grounded solely on state law.[18]

*Lelsz* has been interpreted in *Ibarra v. Texas Employment Commission,* 823 F.2d 873 (5th Cir.1987). *Ibarra* construed *Lelsz* as applying *Pennhurst* to vacate a portion of the district court order enforcing the consent decree when the relief provided by that part of the decree was grounded solely on state law. 823 F.2d at 877, citing *Lelsz,* 815 F.2d at 1034. The *Ibarra* court held:

> Assuming without deciding that *Pennhurst* would extend to a federal court order approving a consent decree, we conclude that *Pennhurst* does not apply to the present case because the consent decree is not based on state law. ... The concerns about state sovereignty and the lack of any federal interests that were critical to *Pennhurst* are not appropriate when, as in this case, the issue is one of interpreting federal law.

Thus, any implication that the *Lelsz* holding went beyond an application of *Pennhurst* to a consent decree based solely on state law is eliminated dispositively by

---

**17.** The court concluded on the basis of a clear record, that the relief in the consent decree was predicated *solely* on state law. This conclusion left the question for the *Lelsz* court as to "whether the district court may enforce the consent decree beyond the guarantees contained in the federal Constitution and laws simply because it is a consent decree." The court held ultimately that such enforcement violated the eleventh amendment. That question is inartfully formed, however, since the precise question was whether a district court can enforce a consent decree based solely on *state* law. The *Lelsz* court held that such enforcement violated *Pennhurst.* To the extent the *Lelsz* court answered a broader question, that answer is dicta. *See* discussion of *Ibarra v. Texas Employment Comm'n,* below.

**18.** This conclusion was strongly attacked by Judge Reavley in an opinion dissenting from the denial of a petition for rehearing *en banc. See* 815 F.2d at 1035–37. Seven of the fourteen judges voting dissented from the denial of the motion for rehearing. Of particular note is the following portion of Judge Reavley's dissent:

> In a contested case, in which a pendent state-law claim is asserted, *Pennhurst,* requires the federal court to look at the source of the claim, but where the parties have not separated their claims and remedies and agree on remedies for both, *Pennhurst* itself places no jurisdictional limitation upon the federal court in enforcing the agreement

*Lelsz,* 815 F.2d at 1036.

*Ibarra.*[19]

*Lelsz,* as clarified in *Ibarra,* then, reads *Pennhurst* to hold that a federal court does not, under *Pennhurst,* have jurisdiction to approve a consent decree predicated solely on state law violations since to do so would offend the eleventh amendment.[20] This doctrine has no bearing, however, on the present case. Here, the plaintiffs' first amended complaint alleged violations of federal law. In response to that complaint, the parties agreed to entry of comprehensive relief. It is literally true that every substantive section of the consent decree is tied to factual allegations in the first amended complaint, which form the factual predicate for plaintiffs' claim that the totality of conditions at the Penitentiary of New Mexico offends the United States Constitution.[21]

19. *Cf. Welsch v. Gardebring,* 667 F.Supp. 1284, 1289 (D.Minn.1987), which is discussed below in note 22.

20. Again, Judge Reavley's distinction between a pure state law claim, and mixed claims, is critical but ignored in *Lelsz.*

21. The following chart demonstrates the relationship between paragraphs in the first amended complaint and portions of the consent decree.

| | |
|---|---|
| Correspondence – | ¶ 28 |
| Public/Attorney Visitation – | ¶ 27 |
| Food Service – | ¶ 21 |
| Legal Access – | ¶¶ 30, 31 |
| Visitation – | ¶ 27 |
| Classification – | ¶ 24 |
| Living Conditions – | ¶¶ 16, 17, 18, 19, 20 |
| Inmate Activity – | ¶¶ 19, 24, 25, 26 |
| Medical Care – | ¶ 29 |
| Mental Health Care – | ¶ 29 |
| Staffing and Staff Training – | ¶¶ 22, 23 |
| Maximum Security – | ¶ 23 |
| Inmate Discipline – | ¶ 32 |

22. In *Welsch v. Gardebring,* the defendants, in challenging the court's jurisdiction to approve a consent decree, made essentially the same argument which is presented here in defendants' motion. The district court's rejection of that argument is predicated on analysis of *Pennhurst, Ex Parte Young,* and *Local No. 93 v. City of Cleveland,* as is done in this opinion.

23. Defendants' reliance on *Washington v. Penwell,* 700 F.2d 570 (9th Cir.1983), is also misplaced. In *Penwell,* the defendants sought to

The foregoing discussion produces two clear conclusions, each of which mandates rejection of each separate strand of defendants' argument.

*First,* because the complaint named state officials in their official capacity as defendants in a suit seeking purely injunctive relief for federal constitutional violations, the eleventh amendment did not afford defendants sovereign immunity. Accordingly, the Court had, and has, jurisdiction over the civil action. *See Welsch v. Gardebring,* 667 F.Supp. at 1288–89.[22]

*Second,* because each element of the relief afforded in the consent decree is tied to a factual allegation in the complaint asserting federal constitutional violations based on the totality of the circumstances, the Court had jurisdiction to enter the consent decree.[23] Thus, defendants' argument that

vacate a provision of the consent decree that required the state to fund a prisoners' legal services organization at a defined level. That provision had been entered by consent in response to a claim that indigent Oregon prisoners were provided with inadequate legal facilities. The court of appeals affirmed the district court's decision vacating the challenged portion. In doing so, the court noted that the provision on its face ran against the State of Oregon and did not limit the decree to the defendants' best efforts to obtain state funding. 700 F.2d at 574. As such, the provision ran afoul of the eleventh amendment. It has long been established that a court order running directly against the state treasury violates the eleventh amendment. *See, e.g., Edelman v. Jordan, supra.*

Certain language in *Penwell* suggests that the funding provision is unenforceable not only because it runs directly against the state but also because it is more than is required to alleviate violations of federal law. This language, however, must be viewed in context of the full discussion of the case, which notes that "if general legal services for prisoners were required by the Constitution, we might be able to enforce this provision, notwithstanding the state's protest." 700 F.2d at 574. That language follows immediately the court's discussion of *Edelman* and *Young.* In this context, then, the *Penwell* holding must be stated as follows: Where a provision in a federal court order explicitly runs directly against the state treasury, and cannot be construed as a provision enforcing federal law which will have an ancillary effect on the state treasury (thereby bringing the injunction within the scope approved by *Edelman* ), the provision is unenforceable. So construed, *Penwell* does not apply to the present circumstance. First, there is no provision in the consent decree

the consent decree approved by the Court in this case is void because it abrogates the state's eleventh amendment immunity, is unavailing.

■ The second major premise of defendants' argument is that even when federal jurisdiction exists, the principle of comity prohibits the entry of relief, even by consent, that extends beyond the measures the Court could have imposed following trial. There is no authority cited by the defendants or discovered by the Court that supports this novel proposition. Indeed, the same proposition was rejected by the United States Supreme Court in *Local No. 93 (Firefighters) v. City of Cleveland, supra.*[24]

In *Firefighters,* the Supreme Court reviewed a consent decree that indisputably granted to plaintiffs substantive relief that went beyond what could have been granted following a trial on the merits. Faced with a challenge that such relief was unauthorized for that the reason, the Supreme Court rejected the contention. As made clear by a lengthy discussion of the nature of consent decrees, the Court concluded that "a federal court is not necessarily barred from entering a consent decree merely because the decree provides broader relief than the court could have awarded after a trial." 478 U.S. at ——, 106 S.Ct. at 3077, 92 L.Ed.2d at 425. In fact, the Supreme Court held that relief in the form of a consent judgment is constrained only by principles of illegality in that a federal court cannot approve relief that would require a violation of substantive law. There is, of course, nothing in the consent decree in this case which requires the defendants to violate any law.

Defendants' attempt to apply the principles of comity and restraint to the Court's review of a consent decree also suggests a peculiar paradox. Were the Court to reject a consent judgment, agreed to by the defendants, on the basis of comity considerations, it would thereby be arrogating the authority of duly empowered state officials to determine the proper operation of state institutions—precisely the judicial act that most offends the defendants. The essence of the consent decree—its animation, in the words of the Supreme Court (*see Firefighters, supra* 478 U.S. at ——, 106 S.Ct. at 3077, 92 L.Ed.2d at 425)—is the consent of the party. Here, the properly named state officials, following negotiations, freely agreed to provisions that would govern the operation of the state's prisons. It would be a bizarre perversion of the principle of comity to suggest that a federal court is required, in order to preserve state autonomy, to override the decisions of state officials and substitute its own judgments.

Several references to defendants' brief will suffice to demonstrate the internal contradiction of defendants' argument. In footnote 1, page 2, the defendants contend that "a federal court ordinarily should accept any reasonable remedial proposal made by ... defendants," citing *New York State Association for Retarded Children, Inc. v. Carey,* 706 F.2d 956, 971 (2d Cir. 1983), *cert. denied,* 464 U.S. 915, 104 S.Ct. 277, 78 L.Ed.2d 257 (1983). "A federal court is not empowered to 'impose upon [governmental agencies] their views of what constitutes wise economic or social policy.'" Defendants' brief at p. 4, citing *Dandridge v. Williams,* 397 U.S. 471, 486, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970). Federal courts should exercise "scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts." *Fair Assessment in Real Estate Association v. McNary,* 454 U.S. 100, 111, 102 S.Ct. 177, 183, 70 L.Ed.2d 271 (1981).[25]

in this case that specifically requires funding by the State of New Mexico. Second, every section of the consent decree in this case is tied to an allegation of federal constitutional deprivation.

**24.** Defendants' citation to *Nelson v. Collins,* 659 F.2d 420, 429 (4th Cir.1981) (*en banc*), is inappropriate. In *Nelson v. Collins,* no constitutional violation was established. Understandably, when there is no violation, equity has no stand-

ing to provide a remedy. *Nelson* does not support any other principle.

**25.** *McNary* is the only case this Court has discovered that discussed comity as a jurisdictional constraint. Of course, *McNary* arose in the peculiar and unique context of a challenge to a state taxing scheme. The restraint on the federal court in such an action derives from the Tax

This Court had no cognizable basis on which to alter the structure or detail of the negotiated consent judgment presented to it for review and approval by the parties.[26] Given that the civil action was properly before the Court, its review of that judgment was limited to a determination of whether any of the relief contained in the decree was illegal and whether the relief was sufficient to protect the interests of the plaintiffs' class. The Court conducted the appropriate review and consequently approved the consent decree. There is no basis for the Court's independent application of its judgment as to the propriety of the specific relief agreed to by the parties in view of the appropriate presumption that the parties have negotiated at arms length and have agreed that the structure of remedies in the consent decree is a fair resolution of their competing claims.

## IX. *Modification.*

Defendants' motion also seeks to vacate portions of the 1980 decree. Although the rule under which this relief is sought is not explicated, the structure of the argument makes clear defendants seek relief under Rule 60(b)(4), Fed.R.Civ.P., which provides that relief from final judgment should be granted when "the judgment is void." *See* Defendants' brief, p. 13. As noted earlier, footnote 1 of defendants' brief suggests that if their comity-based arguments are rejected at the jurisdictional level, they should inform the Court's assessment of the propriety of modification. As is made clear in this order, defendants' jurisdictional arguments seeking vacation of the decree are rejected in that they are unsupported by existing law. The Court is mindful, however, that under certain circum-

stances, a judgment may be modified or altered in its prospective application. The potential legal bases for action of this kind need not be set out here, although the Court has addressed the issue as a general matter previously. *See* Order of October 3, 1986. That order evidences the Court's awareness of *United States v. Swift,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed.2d 999 (1932); *New York Association for Retarded Children, Inc. v. Carey* (Willowbrook), *supra; Newman v. Graddick,* 740 F.2d 1513 (11th Cir.1984), and related cases.

The "flexible" approach to modification set out in *Carey* and related cases permits the Court to assess requests for modification that promote the interest of comity by preserving state administrative discretion as to the means of accomplishing the particular objectives set forth in a decree. That process, however, involves careful assessment not only of the structure of the order and its relationship to administrative discretion, but of other factual considerations including, but not limited to, the state of compliance with existing orders, the degree to which any federal constitutional violations have been cured "root and branch," and the existence of safeguards to prevent future violations. That complex inquiry is one the Court will not undertake in the absence of an appropriate, comprehensive evidentiary record and a thorough briefing on the appropriate standards for modification, to include the equitable bases for modification and the particular modification sought.[27]

## X. *Conclusion.*

The eleventh amendment does not provide immunity to state officials from eq-

---

Injunction Act, 28 U.S.C. § 1341, which prohibits district courts from enjoining state tax activities where there is a plain, speedy and efficient remedy in the courts of that state. *See* 454 U.S. at 103, 102 S.Ct. at 179–80. *See also Tully v. Griffin,* 429 U.S. 68, 73, 97 S.Ct. 219, 222–23, 50 L.Ed.2d 227 (1976), *quoted in Rosewell v. Lasalle National Bank,* 450 U.S. 503, 522, 101 S.Ct. 1221, 1233–34, 67 L.Ed.2d 464 (1981).

**26.** Indeed, when presented with a consent decree compromising a class action, the Court is limited to one of two actions: approving the decree, or rejecting it. It is elemental that in conducting a Rule 23 review of a proposed class

action compromise, the Court may not substitute its judgments of fairness for those of the litigants. Plainly, the Court would be without authority to enter a consent judgment other than that agreed to by the parties, since the consent of the parties would no longer animate the decree.

**27.** The Court is mindful that some endeavor to this end has been undertaken previously. The defendants, however, terminated that process by filing the motion that is the subject of this order.

**854**

uitable actions based on federal constitutional rights. The comity limitations urged by the defendants do not require the Court to interfere with the considered judgments of parties in the fashioning of the consent judgment. The defendants' motion to vacate will be denied.

Wherefore,

IT IS ORDERED, ADJUDGED AND DECREED that defendants' motion to vacate be, and the same hereby is, denied.