UNITED STATES of America, Plaintiff

v.

CITY OF NEW ORLEANS, Defendant.

Civil Action No. 12–1924.

United States District Court,
E.D. Louisiana.

Signed July 25, 2014.

Emily Anna Gunston, Christy E. Lopez, Corey M. Sanders, Jonathan M. Smith, Jude Volek, Roy L. Austin, Jr, Thomas E. Perez, U.S. Department of Justice, Washington, DC, Kenneth A. Polite, U.S. Attorney's Office, New Orleans, LA, Stephen C. Parker, U.S. Attorney's Office, Memphis, TN, for Plaintiff.

Sharonda R. Williams, Christy C. Harowski, Churita H. Hansell, Mary Katherine Kaufman, City Attorney's Office, Brian J. Capitelli, Ralph Capitelli, Capitelli & Wicker, Byron R. Arthur, Arthur Law

Firm, LLC, New Orleans, LA, for Defendant.

## ORDER & REASONS

SUSIE MORGAN, District Judge.

The Court has pending before it a motion filed by the City of New Orleans to amend the Consent Decree.[1] The Court has considered the motion, the record, the applicable law, the Department of Justice's statement of no opposition,[2] the amicus brief filed by the Fraternal Order of Police,[3] and the City's response to the amicus brief,[4] and now enters this Order and Reasons.

## BACKGROUND

The history of this case has been set out in greater detail in previous orders. Briefly, after an extensive investigation of the New Orleans Police Department conducted at the request of the City, the DOJ issued a comprehensive report dated March 16, 2011.[5] In particular, the DOJ's investigation revealed that there "are few aspects of NOPD more broadly troubling than its Paid Detail[6] system" and that this system "was a significant contributing factor to both the perception and the reality of NOPD as a dysfunctional organization."[7]

On January 11, 2013, the Court approved a Consent Decree between the City and the United States.[8] On September 27, 2013, the United States Court of Appeals for the Fifth Circuit affirmed entry of the Consent Decree. *United States v. City of New Orleans*, 731 F.3d 434 (5th Cir.2013). As relevant to this motion, the Consent Decree mandated reforms of secondary law enforcement employment by NOPD officers "to ensure that officers' and other NOPD employees' off-duty secondary employment does not compromise or interfere with the integrity and effectiveness of NOPD employees' primary work as sworn police officers serving the entire New Orleans Community."[9] In particular, pursuant to the Consent Decree the City was obligated to establish a Secondary Employment Coordinating Office with "sole authority to arrange, coordinate, arrange fully-auditable payment, and perform all other administrative functions related to NOPD employees' off-duty secondary law enforcement employment (historically referred to as paid details)."[10] The Consent Decree also provided that "[a] schedule of fees will be established by the City to offset costs associated with the coordination and required support provided through the Coordinating Office to take into account costs, including but not limit-

1. R. Docs. 362, 372 (corrected memorandum in support of motion).

2. R. Doc. 365

3. R. Doc. 374.

4. R. Doc. 384.

5. U.S. Department of Justice Civil Rights Division, Investigation of the New Orleans Police Department (Mar. 16, 2011). *See* R. Doc. 1–1.

6. "Paid details" are referred to as "secondary employment" in the Consent Decree. Many NOPD officers seek secondary employment assignments in order to supplement their NOPD salaries.

7. R. Doc. 1–1 at p. 96.

8. *United States v. City of New Orleans*, No. 12–1924, (filed July 24, 2012), R. Doc. 159 (granting joint motion to enter Consent Decree); *United States v. City of New Orleans*, 947 F.Supp.2d 601 (E.D.La.2013) (denying motion to vacate Consent Decree).

9. R. Doc. 159–1 at 85.

10. *Id.* at ¶ 332.

ed to, administrative fees, hourly wage rates, and equipment usages."[11]

To comply with the Consent Decree, the City, through the City Council and the Mayor, passed a series of ordinances establishing the Office of Police Secondary Employment ("OPSE") and setting hourly rates and administrative fees for secondary employment. *See* New Orleans Ordinances 25428 M.C.S. 90–121, 90–122; 25429 M.C.S. 70–415.244–70–70–415.246; Ordinance Cal. Nos. 29,656, 29,657. As relevant here, Ordinance 25428 adopted on August 8, 2013 amended Section 90–121 of the New Orleans Municipal Code to establish the fee structure for secondary employment, setting a standard hourly rate, an hourly rate for holiday jobs and days of high officer demand, and an administrative fee for all secondary employment.[12]

OPSE has now been operating since August 2013 and has gradually brought more secondary employment positions under its aegis. It has met with an encouraging and increasing level of success and acceptance. The City now argues that the standard and holiday/high demand rates and the administrative fee presently set by Municipal Code Section 90–121 do not adequately address existing conditions, do not provide sufficient flexibility, and, in fact, are hindering OPSE's ability to accomplish the purposes of the Consent Decree. The City moves to amend the Consent Decree.

## LAW & ANALYSIS

■ A consent decree is a judgment, and may be modified for any reason set forth in Federal Rule of Civil Procedure 60(b), including when "applying it prospectively is no longer equitable" and for "any other reason that justifies relief." *See Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 378, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). "District courts must take a flexible approach to motions to modify consent decrees and motions to modify or vacate institutional reform decrees." *League of United Latin American Citizens, District 19 v. City of Boerne*, 659 F.3d 421, 437 (5th Cir.2011) (*"LULAC"*) (citation omitted). "Flexibility is 'often essential to achieving the goals of reform litigation.'" *Id.* (quoting *Rufo*, 502 U.S. at 381, 112 S.Ct. 748). The court has inherent equitable power to modify its own decrees, including consent decrees, to accomplish the intended result. *See LULAC*, 659 F.3d at 436.

■ The Court employs a two-step test to decide whether a consent decree should be amended. *LULAC*, 659 F.3d at 436. First, the "party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree." *Rufo*, 502 U.S. at 383, 112 S.Ct. 748. This can be either a change in facts or a change in the law. *See id.* at 384, 112 S.Ct. 748. For example, "[m]odification of a consent decree may be warranted when changed factual conditions make compliance with the decree substantially more onerous," "when a decree proves to be unworkable because of unforeseen obstacles," or "when enforcement of the decree without modification would be detrimental to the public interest." *Id.* Modification may be warranted even without any factual change "other than recognition of the fact that the initial remedy ha[s] failed."

---

**11.** *Id.* at ¶ 348.

**12.** Ordinance 25428 also amended Section 90–122 of the New Orleans Municipal Code to provide that all fees charged pursuant to Section 90–121 shall be payable to the City of New Orleans and shall be collected by the Department of Finance and deposited into the Police Secondary Employment Fund and used to fund operations of OPSE.

*LULAC*, 659 F.3d at 438. Thus, in *United States v. United Shoe Machinery Corp.*, the Supreme Court held that amendment of a consent decree can be justified "where there were no factual or legal changes other than recognition of the fact that the initial remedy had failed." *See LULAC*, 659 F.3d at 438 (citing *United Shoe*, 391 U.S. 244, 252, 88 S.Ct. 1496, 20 L.Ed.2d 562 (1968)). And "*Rufo* cited *United Shoe* positively to support the proposition that courts should apply a flexible approach when deciding modification requests." *See id.* (citing *Rufo*, 502 U.S. at 379, 112 S.Ct. 748). The Fifth Circuit and many other courts have applied this precedent to affirm that "the court must remain continually willing to modify the order to ensure that it accomplishes its intended result," *Police Ass'n of New Orleans ex rel. Cannatella v. New Orleans*, 100 F.3d 1159, 1168 (5th Cir.1996) and that "changed circumstances and failure to achieve the decree's aims both may warrant decree modification," *LULAC*, 659 F.3d at 438 n. 20 (citing *Doe Sr. 1-13 v. Bush*, 261 F.3d 1037, 1063–64 (11th Cir.2001)).

Once the movant has established that there has been a change in circumstances or that the decree is failing to achieve its intended result, the second step is for the Court to "consider whether the proposed modification is suitably tailored" to the issue the change is intended to address. *Rufo*, 502 U.S. at 383, 112 S.Ct. 748.

## A. Changed Circumstances/Failure to Accomplish Intended Result

In this case, the Court must first determine whether the City has met its burden of establishing that there has been a change in factual circumstances or that the Consent Decree is failing to achieve its intended result of effectively reforming secondary employment to ensure constitu-

tional policing. The Court has met with the parties regularly over the last two years and has received regular reports about OPSE's efforts from the court-appointed Consent Decree Monitor and from John L. Salomone, Jr., OPSE's Executive Director. The Court also has reviewed Director Salomone's affidavit filed in support of the City's Motion in which he lists his responsibilities, including confirming that officers are eligible to work secondary employment, meeting with current and potential customers, filling requests for secondary employment, identifying secondary employment opportunities, accepting payment from customers, and ensuring that OPSE complies with the Consent Decree.[13] Of importance to the issue now before the Court, Director Salomone has sworn to the following facts:

- Customers and potential customers historically paid and remain willing to pay higher rates for secondary employment than permitted under the current hourly rate schedule established by the City;

- Some jobs demand pay that is higher or different from the amounts permitted under the current hourly rate schedule because some jobs require more difficult security work than other jobs or simply present circumstances that require a different pay rate;

- The marketplace requires that more difficult jobs offer higher compensation to ensure that they are fully staffed;

- Examples of jobs requiring higher pay are Parasol's Bar & Restaurant's security for its St. Patrick's Day Block Party sponsored with Tracey's Original Irish Channel Bar, for

**13.** R. Doc. 362–2.

which a rate of $40.00 was offered to ensure sufficient participation by officers;

- Other employers have raised similar concern about events that are difficult security jobs and/or jobs occurring at the same time as other events requiring a large number of NOPD officers but which are not specified as high demand events under the Consent Decree;

- Additional flexibility is needed to make the hiring of NOPD officers through OPSE practicable for customers who regularly hire large numbers of NOPD officers through OPSE;

- Additional incentives are needed to encourage NOPD officers to volunteer for secondary employment;

- The current fee and pay rates threaten to limit the number of secondary employment opportunities available for NOPD officers through OPSE;

- The wage and fee schedule proposed by the City is based on market research on the secondary employment pay offered by over 80 customers in New Orleans prior to the establishment of OPSE;

- Flexibility in pay rates is needed to adequately address customer needs and provide high quality security services;

- It is important that NOPD personnel and customers have confidence that OPSE is insulated from political influence and conflict of interest;

- Public safety is enhanced by having NOPD officers volunteer for secondary employment through OPSE.

 Director Salomone oversees all aspects of OPSE and undoubtedly has personal knowledge of the topics covered in his affidavit and is competent to testify with respect to these matters. Neither DOJ nor FOP dispute the statements attested to by Director Salomone and neither filed a contravening affidavit or other evidence.[14] The Court adopts the factual statements made in Director Salomone's affidavit as its findings of fact. The Court finds the facts established by Director Salomone's affidavit are sufficient for the City to meet its burden of establishing that there has been a change in circumstance and that the Consent Decree is failing to achieve its intended result. Either finding is sufficient to satisfy step one of the two step test for amendment of the Consent Decree.

The need for rates in addition to the standard rate and holiday/high officer demand rate, with one administrative fee applicable under all circumstances, set in Section 90–121, and the need for flexible rates and fees for certain one-time events, are significant changes in the circumstances facing the City.[15] OPSE does not

14. The FOP does not contend that Director Salomone's affidavit is factually inaccurate. R. Doc. 374.

15. The FOP contends that the City has not carried its burden to demonstrate a "significant" change in circumstances because the limitations of the one-size-fits-all rate structure were made known to Colonel Salomone and the City before Section 90–121 was amended. R. Doc. 374 at 6–7. But as the Supreme Court has recognized, requiring a change of circumstance to be both "unforeseen and unforeseeable" is too strict a standard for amending a consent decree. *See Rufo*, 502 U.S. at 384, 112 S.Ct. 748. Furthermore, the Fifth Circuit recognizes that a consent decree may be amended even if factual circumstances have not changed if "the initial remedy ha[s] failed." *LULAC*, 659 F.3d at 438.

have the ability to offer the rates needed to ensure that NOPD officers will volunteer for secondary employment. OPSE does not have the ability to react quickly to unique opportunities for secondary employment as they arise. Just as importantly, OPSE does not have the authority to offer discounts on administrative fees to high volume customers or to offer higher rates of pay to NOPD officers who volunteer for a high number of hours. According to the City's motion, the current rate structure has proven to be unworkable and the City is unable to react to the requests of customers in a timely and flexible fashion to address the needs of NOPD officers, private customers, and OPSE. Jobs which customers would gladly offer and NOPD officers would gladly work are going unperformed solely because OPSE is constrained by the rate schedule set forth in Municipal Code Section 90–121. For example, there are certain jobs for which customers are willing to pay more than is presently allowed by the Ordinance, and which NOPD officers are not willing to work for the rates presently allowed by the Ordinance. Thus, jobs are going unfilled primarily because of the inflexible hourly rates set forth in the Ordinance. OPSE must have the ability to schedule work at higher rates offered by customers, to set one-time departures, to offer increased payments to NOPD officers who volunteer for substantial hours of secondary employment, and to offer volume discounts to customers who schedule a high number of hours of secondary employ-

ment, and it must be able to do all this in a timely and often expedited manner.

**B. Narrowly Tailored Modification**

Before the Consent Decree may be amended, the Court also must be satisfied that the proposed amendment is narrowly tailored to address the changed factual circumstances or the failure of the consent decree to accomplish its intended purpose, or both. The City's proposed amendment to the Consent Decree is narrow: amend Paragraph 348 to provide that in the future the Court will set rates and fees for secondary employment.[16] To determine whether the proposed amendment not only is narrowly tailored but also will achieve its intended result, the Court also must consider the City's request that, after amendment, the Court exercise its authority to set the additional pay rates requested by the City, to allow for additional compensation to an officer in the event he or she works forty or more hours of secondary employment events during any two week period, to allow an administrative fee discount to customers who schedule one hundred or more of hours of secondary employment within a two week period, and to allow the OPSE Director to establish a different pay rate for one-time (non-recurring) events when appropriate. The Court concludes that the proposed amendment is suitably tailored to address changed circumstances and the additional rates and other provisions requested by the City will ensure the Consent Decree will achieve its intended results.[17]

---

**16.** It is not the Court's intent that this amendment will "open the door to a total bypass of the [City] Council for any issue even tangentially related to implementation of the Consent Decree." R. Doc. 374 at 4.

**17.** The Court notes that the City's Home Rule Charter does not mandate that the City Council set hourly rates and fees for secondary employment. The Consent Decree approved

by the Court provided that the City would set the initial hourly rate and administrative fee. In its brief, the Fraternal Order of Police contends that the proposed amendment is an end-run around the City's Home Rule Charter and an attempt to bypass the City Council's authority to set fees and pay rates. R. Doc. 374–at 3–4. But the Home Rule Charter does not require the City Council to set secondary

The solution proposed by the City, to have the Court set rates and fees and authorize variations where appropriate, is practical and efficient. The Court has been involved in the implementation of the Consent Decree, including the establishment of OPSE, and is the entity responsible for ensuring that the Consent Decree is fair, adequate and reasonable and that its terms are met. The Court, with the assistance of the Consent Decree Monitor, is uniquely suited to the task of considering requests to set additional hourly rates and responding quickly. The Court is able to provide the oversight needed to ensure NOPD officers and the public that pay rates for secondary employment are being set in an impartial manner not subject to improper influence. The Court can and will provide both the oversight needed and the speed and flexibility that will allow OPSE to succeed. The Court remains convinced that reform of secondary employment is integral to constitutional policing in the City of New Orleans and is committed to ensuring that OPSE has all the tools needed to be a success.

Because the City has carried its burden as to both steps of the two-step analysis, the Court will exercise its discretion to amend the Consent Decree to place the authority to set rates and fees for secondary employment with the Court.

## C. Revising the Secondary Employment Rate and Fee Schedule

As mentioned above, the City urges the Court to exercise its authority under amended ¶ 348 to (1) adopt the City's proposed schedule of rates and fees in addition to the standard hourly rate and the holiday/high demand rate set forth in Municipal Code Section 90–121,[18] (2) authorize a procedure for one-time Court-approved departures from the established fee schedule, (3) grant OPSE additional authority to discount the administrative fee for employers scheduling more than 100 hours of secondary employment in a pay period, and (4) grant OPSE the authority to pay a portion of the administrative fee to an officer who performs more than 40 hours of secondary employment in a pay period.[19]

employment rates and administrative fees. Section 3–101 authorizes the Council to "levy any and all classes of taxes, excises, licenses, liens and fees necessary for the proper operation and maintenance of the municipality for the payment of debt, and for capital improvements," but rates and fees for secondary employment have nothing to do with "payment of debt" or "capital improvements." And, although under Section 3–118 the City Council may adopt "pay plans," this Home Rule Charter authority reaches only to "persons employed by the City ... and paid either in part or in whole from appropriations made by the Council." NOPD officers working secondary employment are paid by the customer, and they are not "employed by the City" when working secondary employment. *See Powers v. New Orleans City*, No. 13–5993, 2014 WL 1366023 (E.D.La. Apr. 7, 2014). Thus, entirely aside from any questions of federal preemption, having the Court set rates and fees does not impinge on the authority of the City Council. The City Council's ability to

set pay rates and administrative fees derived only from the Consent Decree which is subject to amendment by the Court.

**18.** The City included a corrected table of hourly rates and administrative fees in its response to the amicus brief. R. Doc. 384 at 4.

**19.** For the sake of clarity, the administrative fee of 15% or a maximum of $5.00 established in Municipal Code Section 90–121 remains unchanged. The definition of Major Special Events remains the prerogative of the City Council and is set forth in Section 90–121. Specified holidays and days of High Officer Demand are as set forth in Section 90–121 and will fall under the Tier 3 rate suggested by the City unless a customer agrees to pay an increased rate. Any administrative fees collected in excess of the amount actually required for the operation of OPSE shall be proportionally refunded to the officers annu-

The DOJ takes no position on the proposed rate and fee structure or other provisions of this portion of the City's motion. The FOP, although opposed to the Court setting fees and rates, actually "welcomes and supports providing more realistic rates of pay for police officers working secondary employment." [20] Based on the record evidence before the Court, it is evident that the tiered rate structure proposed by the City incorporates the rates set by Section 90–121, while adding additional tiers, and the administrative fee remains the same. [21] It is clear other provisions suggested by the City to provide additional flexibility in hourly fees and administrative rates, upon court approval, are needed to ensure OPSE's success.

The Court exercises its authority under ¶ 348 of the Consent Decree as amended and adopts the rate and fee schedule and other provisions suggested by the City. [22]

### CONCLUSION

**IT IS ORDERED** that the motion is **GRANTED.** Paragraph 348 of the Consent Decree entered by this Court on January 11, 2013 [23] shall be amended as follows (deletion shown by strikeout and addition in bold print):

348. A schedule of fees will be established by ~~the City~~ **the Court** to offset costs associated with the coordination and required support provided through the Coordinating Office to take into account costs, including but not limited to, administrative fees, hourly wage rates, and equipment usually, and if a surplus is collected, OPSE shall reduce the administrative fee to the percentage that would have provided sufficient funding, rounded up to the nearest whole percentage, as set forth in Section 90–121.

20. R. Doc. 374 at 1.

21. R. Doc. 362–2 at 3–4.

ages. The schedule of fees shall be publicly available.

**IT IS FURTHER ORDERED** that the Court adopts the City's proposed schedule for hourly rates and administrative fees for secondary employment and the other provisions requested by the City, which the Court shall issue in a separate document.

22. The Court approves of and encourages OPSE's efforts to educate NOPD officers and customers regarding the service it provides, particularly in light of misinformation from other sources.

